**PLAIN DEALER PUBLISHING COMPANY et al., Plaintiffs,**

v.

**UNITED STATES DEPARTMENT OF LABOR et al., Defendants.**

Civ. A. No. 78–1647.

United States District Court, District of Columbia.

June 8, 1979.

Douglas K. Spaulding, Washington, D. C., for plaintiffs.

David H. Shapiro, Asst. U. S. Atty., Washington, D. C., for defendants.

## MEMORANDUM

GASCH, District Judge.

This is an action brought by plaintiffs Plain Dealer Publishing Company and its newspaper's Washington bureau chief, Robert H. Snyder, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1976), against defendants United States Department of Labor and its Secretary, F. Ray Marshall. Plaintiffs seek access to inspect and copy the files active on June 9, 1978, of all workers' compensation claims filed by or on behalf of employees of the Office of Workers' Compensation Programs (OWCP) in the Department of Labor. Defendants, relying on exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6) (1976), have refused to disclose these files on the ground that disclosure would constitute a clearly unwarranted invasion of personal privacy.

Both plaintiffs and defendants have moved this Court for summary judgment.[1] After carefully considering the arguments raised by the parties in their memoranda and in open Court, the Court has concluded for the reasons stated below that the files withheld by defendants are exempt from disclosure.[2]

## I. BACKGROUND.

A. *History of This Action.*

By a letter dated June 9, 1978, plaintiffs requested access to inspect and copy all workers' compensation claim file documents

---

**1.** At oral argument on the parties' cross-motions for summary judgment, both parties agreed that there is no genuine dispute as to the material facts in this action.

**2.** The Court does not believe that *in camera* inspection of the withheld files is necessary, because defendants have met the burden of showing that the files are covered by exemption 6. *EPA v. Mink,* 410 U.S. 73, 93, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); *see* note 5 *infra* and accompanying text. As required by *Vaughn v.*

*Rosen,* 157 U.S.App.D.C. 340, 484 F.2d 820 (1973), defendants have filed a detailed justification, itemization, and indexing. This *Vaughn* filing includes a sanitized list of the documents contained in a representative active file of a workers' compensation claim by an OWCP employee. This sanitized list has eliminated any argument between the parties as to the contents of the requested files, and enabled defendants to demonstrate that the files are covered by exemption 6.

for currently active claims filed by or on behalf of employees of the Office of Workers' Compensation Programs. This request, addressed to Sophia P. Petters, Solicitor's Office, Department of Labor, was made under the Freedom of Information Act, 5 U.S.C. § 552 (1976).

By a letter dated June 21, 1978, Ralph M. Hartman, Director of the OWCP, denied plaintiffs' request. The basis for the denial was exemption 6 of the FOIA, 5 U.S.C. § 552(b)(6) (1976), which exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy . . . ."

By a letter dated July 24, 1978, plaintiffs appealed the denial of their FOIA request. On September 1, 1978, having received no response to its appeal and relying on 5 U.S.C. § 552(a)(6)(C) (1976), which provides that the requester is deemed to have exhausted his administrative remedies when the agency fails to respond to a FOIA appeal within twenty days, plaintiffs filed this action to compel disclosure of the requested documents. On the same date, plaintiffs also filed a motion to require detailed justification, itemization, and indexing.

On October 5, 1978, defendants filed its answer to plaintiffs' complaint. On October 25, 1978, defendants filed a response to plaintiffs' motion to require detailed justification, itemization, and indexing. This response included an affidavit by Miriam McD. Miller, an assistant to the Counsel for Administrative Legal Services, Office of the Solicitor, Department of Labor, who stated defendants' reliance on exemption 6 for withholding the requested files. Attached to the Miller affidavit as defendants' Exhibit D is a sanitized list of the documents contained in a representative active file of a claim for workers' compensation by an OWCP employee.

On February 28, 1979, plaintiffs and defendants filed motions for summary judgment and supporting memoranda. On March 13, 1979, both parties filed replies to the motions for summary judgment. On May 23, 1979, oral argument was heard on the parties' cross-motions for summary judgment.

B. *The Federal Employees Compensation Program.*

The Federal Employees Compensation Act (FECA), 5 U.S.C. §§ 8101–8193 (1976), provides for a program of compensation to all federal civil officers and employees who are injured or disabled in the performance of their employment, and to certain survivors of these individuals who have died as a result of or in the performance of their employment. As authorized by the Act, *id.* § 8145, the Secretary of Labor has delegated the responsibility for administration of the FECA to the Director of the OWCP. Employee claims filed under the FECA are processed by the OWCP, which renders a decision awarding or denying the payment of compensation. *Id.* § 8124; 20 C.F.R. §§ 10.130–10.136 (1978). Final decisions of the OWCP are reviewable by the Employees' Compensation Appeals Board (ECAB), *id.* § 10.137, which renders a publicly available, written decision in which the Board sets forth an appropriate order and the reasons supporting its disposition, *id.* § 501.6.

The Department of Labor has issued regulations setting forth the rules for filing, processing, and paying claims for workers' compensation under the FECA. These regulations require a FECA claimant to give written notice to his superior of any traumatic injury or occupational disease or disability, *id.* §§ 10.100, 10.102, to file with the OWCP a written claim for compensation, *id.* §§ 10.105–10.109, and to submit to the OWCP evidence pertinent to his claim, such as an affidavit or report as to his employment and earnings, documentary evidence, and statements of witnesses and physicians, *id.* §§ 10.110–10.111. Another regulation, *id.* § 10.103, requires an employee's superior to submit to the OWCP a written report of every injury or occupational disease that is likely to result in a medical charge against the OWCP, result in a disability for work beyond the day of injury, require prolonged treatment, result in future or permanent disability, or result in a continuation of pay.

Under another regulation, *id.* § 10.11, all records in the OWCP pertaining to an injury or a death are confidential and generally exempt from disclosure to the public under 5 U.S.C. § 552(b)(6) (1976).

## II. *DISCUSSION.*

### A. *Exemption 6.*

■ Exemption 6, 5 U.S.C. § 552(b)(6) (1976), to the FOIA exempts from mandatory disclosure personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. In ruling on an exemption 6 claim, a court must determine *de novo* (1) whether the material requested falls within the type of matter covered by the exemption, *i. e.,* "personnel and medical files and similar files," and if so, (2) whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." *Ray v. Turner,* 190 U.S.App.D.C. 290, 324, 587 F.2d 1187, 1221 (1978) (per curiam) (Wright, C. J., concurring in the remand); *Pacific Molasses Co. v. NLRB Regional Office # 15,* 577 F.2d 1172, 1178 (5th Cir. 1978). If the latter determination is necessary, a court must engage in a balancing of the interests between the protection of an individual's private affairs from public disclosure and the preservation of the public's right to governmental information.[3] *Department of the Air Force v. Rose,* 425 U.S. 352, 370–82, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); *Getman v. NLRB,* 146 U.S.App.D.C. 209, 212–16, 450 F.2d 670, 673–77 (1971).

### 1. *Workers' Compensation Claim Files.*

To determine whether the requested files are personnel, medical, or similar files,[4] it is necessary for the Court to perform two functions: first, the Court must consider the meaning of the words "personnel, medical, and similar files." Second, with this consideration in mind, the Court must examine the sanitized list of documents contained in an active file for a workers' compensation claim by an OWCP employee, and determine whether the documents are covered by exemption 6.

In *Department of the Air Force v. Rose, supra,* the Supreme Court noted that "personnel files" ordinarily contain information such as "where [an individual] was born, the names of his parents, where he has lived from time to time, his high school or other school records, results of examinations, evaluations of his work performance." 425 U.S. at 377, 96 S.Ct. at 1606. The Court also provided an indication of what material might be characterized as "similar files" by holding Air Force Academy case summaries to be similar to personnel files. This holding was required, the Court wrote, because the case summaries relate to the discipline of cadet personnel, and because disclosure of the summaries implicates similar privacy values. *Id.* at 376–77, 96 S.Ct. at 1606.

In contrast to the difficulties involved in defining the terms "personnel" and "similar" files, courts have had no problem in determining what types of documents are "medical files." In most cases, *e. g., Columbia Packing Co., Inc. v. United States Department of Labor,* 563 F.2d 495 (1st Cir. 1977); *Disabled Officers Association v. Rumsfeld,* 428 F.Supp. 454 (D.D.C.1977), the

---

**3.** It is unnecessary in this case to decide whether a restrictive balancing, as suggested in *Getman v. NLRB,* 146 U.S.App.D.C. 209, 450 F.2d 670 (1971), or an unrestrictive balancing, as suggested in *Ditlow v. Schultz,* 170 U.S.App. D.C. 352, 517 F.2d 166 (1975), is the more appropriate. As the discussion below makes clear, disclosure of the requested files would not be restricted only to plaintiffs, for they offer the Court no promise of limiting disclosure to themselves and in fact contemplate the possibility of publishing some or all this information in their newspaper. Moreover, plaintiffs suggest only one public interest—namely, monitoring the administration of the FECA—

that disclosure would serve, and the Court can conceive of no other public interest that disclosure would serve.

**4.** *Plaintiffs do not directly address the question whether the requested files are personnel, medical, or similar files. Instead, plaintiffs argue only that no privacy rights exist in these files. Because this argument concerns the extent to which privacy interests would be invaded by disclosure, the Court postpones consideration of this argument until after it has determined whether these files are covered by exemption 6.*

parties apparently have agreed that the requested information at issue was covered by the term "medical files." Similarly, in this case plaintiffs do not dispute that documents pertaining to a claimant's medical condition or to medical treatment for his injury or disability are "medical files." Indeed, as defendants argue, it is clear that such documents must be considered "medical files."

■ With these considerations in mind, the Court has examined the sanitized list of documents contained in an active file for a claim by an OWCP employee. This examination has led the Court to conclude that the requested files contain documents that fit into each of exemption 6's three protected categories, and that all of these documents are covered by exemption 6.[5] Having reached this conclusion, the Court must proceed to balance the invasion of privacy against the public interest served by disclosure.

### 2. *Invasion of Privacy.*

Plaintiffs argue that no privacy right exists in the requested files because of the "public" nature of the information contained in the files.[6] In making this contention, plaintiffs offer two different arguments. First, plaintiffs note that the federal workers' compensation program is admin-

---

**5.** Documents in the "medical files" category include physician's letters regarding claimant's condition, progress, and ability to work; physician's letters regarding the cause of claimant's disability; a questionnaire regarding claimant's disability; a letter from the Medical Director to claimant's physician regarding claimant's treatment; a clinical psychologist's evaluation of claimant; certificates of medical examinations; and doctor's statements.

Documents in the "personnel files" category include vocational rehabilitation reports; a university report card; a letter regarding tuition; a college study list and grade report form; a university advanced standing evaluation report; a letter regarding grade reports; a letter regarding registration; certificates of vocational training; a questionnaire regarding dependents; a letter regarding progress in studies; a letter transmitting fall curriculum; a questionnaire regarding employment status; a vocational training plan; a memorandum regarding claimant's vocational training plan; letters regarding school schedule and training plans; memoranda regarding claimant's college schedule and enrollment in college; memoranda and a report regarding suitable job assignments for claimant and his capability of performing jobs; a memorandum regarding work evaluation program for claimant; letters and a memorandum regarding vocational rehabilitation for claimant; a memorandum regarding referral of claimant for training; a letter regarding possible vocational training; a referral for rehabilitation; a letter regarding claimant's wage earning capacity; a work tolerance limitations form; reports and a note regarding the possibility of returning to employment; a letter and a memorandum regarding employment needs of claimant; a job description and subsequent amendment; a sick leave record; a health qualification record; an application for federal employment; a supervisor's report on employee during probationary period; notifications of personnel actions; supervisor's notes regarding claimant's duties and job attitude; performance evaluations of claimant; claimant's statement regarding performance; and claimant's notice of injury or occupational disease.

The remaining documents in the representative file fit into the "similar files" category, because they relate in some way to the claimant's work-related injury or disability, or his medical or personnel history, and because disclosure of these documents implicates similar privacy concerns. *Department of the Air Force v. Rose, supra*, 425 U.S. at 376–77, 96 S.Ct. at 1606. These documents include reports and lists of medical and related expenses; letters regarding travel vouchers and changes of address; disability benefit payment worksheets; authorizations for change of benefit payments; notes regarding payments; checks; letters transmitting bills and receipts for expenses; adjustments to FECA disability award; a schedule of doctor's visits; letters regarding requests for reimbursement; a note regarding pharmacy expenses; a note and letter regarding increases in maintenance allowance; bills for gym shoes and school supplies; letters regarding checks for improper amount; memoranda, letters, and notes regarding evaluation and processing of claim; letters regarding health benefits enrollment; statements of a witness regarding claimant's case; bills and invoices from bookstores; pharmacy bills; transportation requests; travel vouchers; office supply company bills; and miscellaneous receipts.

**6.** In the alternative, plaintiffs suggest that disclosure would constitute only an incidental invasion of personal privacy. Because plaintiffs offer no justification for this suggestion other than the arguments they make regarding the "public" nature of information in the files, the Court considers this suggestion only as it relates to those arguments.

istered by a "public" agency and involves the expenditure of "public" funds for the benefit of "public" employees. Because of these facts, plaintiffs insist that the requested files must be "public." Second, plaintiffs note that when a FECA claimant appeals the decision of the OWCP awarding or denying a benefit, the ECAB's publicly available decision will disclose the facts surrounding the work-related injury or disability. The ECAB's disclosure of these facts, plaintiffs maintain, cannot be legally distinguished from disclosure of the requested files.

■ Both of plaintiffs' arguments are without merit. Plaintiffs' first argument is merely an attempt to use the word "public" a sufficient number of times so as to suggest that the requested files ought to be characterized as "public." The fallacy in this argument is plain. That the agency administering the program, that the funds expended under the program, and that the employees benefiting from the program are all "public" is irrelevant to a determination of whether privacy rights exist in these files. Moreover, if plaintiffs' suggestion were adopted, it would directly contradict the intent of Congress in enacting exemption 6. For the legislative history of that exemption expressly recognizes the privacy interests present in the confidential personnel, medical, and similar files of the Veterans' Administration—which is a "public" agency expending "public" funds for the benefit of former "public" employees. S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966); U.S.Code Cong. & Admin.News 1966, p. 2418.

Plaintiffs' second argument is similarly without merit. Contrary to plaintiffs' argument, two legal distinctions can be drawn between the requested files and the publicly available ECAB decisions. First, a distinction exists because adverse decisions are appealed to ECAB at the sole discretion of the claimant. 20 C.F.R. § 10.137 (1978). By appealing with the full knowledge that the ECAB's decision will be publicly available, a claimant affirmatively waives his right to privacy in the facts pertaining to his claim. Second, the legislative history of exemption 6 suggests that a distinction be drawn between disclosure of the actual files on an individual and disclosure of the facts concerning the award of a benefit. The House Report, for example, states that the exemption is "intended to cover detailed Government records on an individual which can be identified as applying to that individual and not the facts concerning the award of a pension or benefit . . . ." H.R.Rep.No.1497, 89th Cong., 2d Sess. 11 (1966); accord, S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); U.S.Code Cong. & Admin.News 1966, p. 2428.

Contrary to plaintiffs' suggestion that disclosure of the requested files would involve either no invasion of privacy or only an incidental one, the Court concludes that disclosure would create a serious invasion of the privacy of OWCP-employed claimants. Disclosure would reveal the intimate details of a claimant's work-related injury or disability. It would also reveal a claimant's medical history, including any related injuries or disabilities, and a clinical psychologist's evaluation of a claimant. It would further reveal important facts concerning a claimant's employment history, including his earning capacity and potential, his vocational or educational training, and candid evaluations by his supervisor.

These revelations, in violation of a claimant's expectation of confidentiality in these files, 20 C.F.R. § 10.11 (1978); see Robles v. EPA, 484 F.2d 843, 846 (4th Cir. 1973), would lead to embarrassment and practical difficulties, such as loss of friends or other employment opportunities. See Department of the Air Force v. Rose, supra, 425 U.S. at 377, 96 S.Ct. at 1606. It is plain that an individual of normal sensibilities will be embarrassed by public disclosure of these confidential intimate details, particularly because it is unlikely that the full nature and extent of his injury or disability previously would have been known to the public. It is equally plain that claimants will experience practical disabilities as a result of disclosure of these confidential

intimate details, some of which could be highly embarrassing, because disclosure may cause an individual to lose friends who for one·reason or another might be prejudiced by this information. Disclosure may also cause a claimant to lose employment opportunities, because a prospective employer, having access to the intimate details of the claimant's medical and employment history, may decline to offer employment, or offer it only at a reduced salary or in a lower position.

### 3. *Public Interest.*

Plaintiffs assert that there is a strong public interest in disclosure of the requested files. This strong interest, plaintiffs argue, is based on the need for monitoring the operation of the FECA, a costly public program. Close public scrutiny of the administration of this program, they claim, will be possible only through disclosure of these files.

Plaintiffs further assert that past instances of abuse in the administration of the FECA underscore the need for disclosure. Plaintiffs base their allegations of abuse on reports by the House Subcommittee on the Departments of Labor and Health, Education, and Welfare; the Comptroller General; and the Department of Labor. These reports demonstrate, according to plaintiffs, that many claims paid under the FECA are unsubstantiated and that an inordinately high number of OWCP employees receive benefits under the FECA.

Plaintiffs cite *Columbia Packing Co. v. United States Department of Agriculture,* 563 F.2d 495 (1st Cir. 1977), in support of their public interest argument. Plaintiffs maintain that in *Columbia Packing* the court recognized a significant public interest in disclosure where allegations of official abuse or misconduct are involved.[7] *Id.* at 499–50.

In *Columbia Packing*, plaintiff company, which had been convicted on several counts of bribing federal meat inspection officials, sought to obtain under the FOIA the personnel and medical files of those officials. The court of appeals recognized a legitimate public interest in the officials, who were convicted of taking bribes and whose illegal activities were widespread and extensively publicized. · The court then weighed this public interest against the privacy interests at stake in the two types of files, and concluded that the medical files were exempt from disclosure, but that personnel files should be disclosed.

The present action may readily be distinguished from those aspects of *Columbia Packing* that are relied on by plaintiffs. In *Columbia Packing* the court observed that ordinarily the individual careers of public servants are of small general interest, but that the meat inspection officials' involvement in bribery and their resulting convictions created a legitimate public interest in their careers. In this case, in contrast to the officials in *Columbia Packing*, the subjects of the requested files have neither been accused nor convicted of any criminal activity. Indeed, plaintiffs state only that there are an inordinately high number of OWCP employees making claims under the FECA. Such a statement, without more, is insufficient to create a strong public interest in these files.

Having rejected plaintiffs' suggestion that there is a strong public interest in disclosure of these files, the Court turns to assess the public interest in disclosure. Plaintiffs' only asserted public interest purpose—exposing abuses in the administration of the FECA—depends for its fulfillment on. two of plaintiffs' own assumptions. First, plaintiffs assume that many OWCP-employed claimants are receiving improper

---

**7.** Plaintiffs also cite *Philadelphia Newspapers, Inc. v. Department of Housing and Urban Development,* 343 F.Supp. 1176 (E.D.Pa.1972), for the same proposition. In that case, plaintiff newspaper sought the names and addresses of fee appraisers who had evaluated certain properties for FHA insurance. The court ordered disclosure, rejecting defendants' claims that exemptions 5 and 7 exempted the requested information from disclosure. In the course of its opinion, the court in dictum noted a public interest in alleged improprieties by public officials.

benefits under the FECA. Second, plaintiffs assume that by examining the requested files they will be able to discern which claimants are entitled to benefits and which are not. Because of the likelihood that no public interest will be served by disclosure of the requested files if either of these assumptions is invalid, and because of the absence of any concrete evidence of wrongdoing by the OWCP-employed claimants, the Court can only conclude that the public interest in disclosure is speculative.

#### 4. *Balancing the Interests.*

 Having concluded that disclosure of the requested files would result in a serious invasion of privacy and that the public interest to be served by disclosure is speculative, the Court must now balance these interests. Given its previous conclusions, the Court holds that the invasion of privacy outweighs the speculative interest the public may have in disclosure and therefore that disclosure would constitute a clearly unwarranted invasion of personal privacy.

#### B. *The Privacy Act.*

The Privacy Act, 5 U.S.C. § 552a (1976), needs to be considered only briefly, for it has no effect on the present action. *Sears, Roebuck & Co. v. General Services Administration,* 180 U.S.App.D.C. 202, 207, 553 F.2d 1378, 1383, *cert. denied,* 434 U.S. 826, 98 S.Ct. 74, 54 L.Ed.2d 84 (1977). The Privacy Act prohibits the disclosure of any kind of retrievable information about an individual in the government's files. 5 U.S.C. § 552a(a)(5) (1976). It does, however, provide that an agency may disclose such information without obtaining the individual's consent if disclosure would be required under the FOIA. *Id.* § 552a(b)(2). The net effect of these provisions is to permit disclosure where the FOIA requires it, but to prohibit disclosure where the FOIA allows the agency to refuse to disclose. Thus, as applied to the present case, the Privacy Act prohibits defendants from disclosing any workers' compensation file in the absence of an individual's consent.

### III. *CONCLUSION.*

For the reasons set forth above, the Court concludes that plaintiffs' motion for summary judgment must be denied and defendants' motion for summary judgment must be granted.