**COLUMBIA PACKING COMPANY, INC., Plaintiff, Appellee,**

v.

**UNITED STATES DEPARTMENT OF AGRICULTURE et al., Defendants, Appellants.**

**No. 76–1417.**

United States Court of Appeals, First Circuit.

Oct. 6, 1977.

Argued Jan. 5, 1977.

Decided Sept. 21, 1977.

Frederic D. Cohen, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C., with whom Rex E. Lee, Asst. Atty. Gen., Washington, D.C., James N. Gabriel, U.S. Atty., Boston, Mass., and William Kanter, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D.C., were on brief, for appellants.

Stephen R. Delinsky, Boston, Mass., with whom Frank Giso, III and Peabody, Brown, Rowley & Storey, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, BOWNES, District Judge.*

LEVIN H. CAMPBELL, Circuit Judge.

Appellee Columbia Packing Co. (Columbia) is a federally inspected meat packing plant in Boston. In 1974 Columbia and its vice president were convicted on numerous counts of bribing two federal meat inspection officials, Joseph F. Mauriello and Domenic L. Germano. The two inspectors were themselves convicted in other proceedings of receiving bribes from other companies. The scandal revealing widespread corruption in the meat packing industry and the inspection service received extensive local publicity.

In November of 1974 the Animal and Plant Health Inspection Service of the United States Department of Agriculture (USDA) which conducts federal meat and poultry inspection initiated administrative proceedings under 21 U.S.C. §§ 467, 671, to withdraw federal inspection services from Columbia on grounds that the company's participation in the bribery had rendered it unfit to engage in any business requiring inspection. Withdrawal of federal inspection would result in Columbia's going out of business since the company would no longer be entitled to introduce its products into the stream of interstate commerce.

During preliminary administrative proceedings, Columbia moved for extensive discovery of documents in USDA's possession, including, "All employment and personnel files including staff evaluations of former meat and poultry inspectors Joseph F. Mauriello and Domenic L. Germano." Between that time and the present, USDA has re-

---

* Of the District of New Hampshire, sitting by designation.

leased information to Columbia but has withheld from the personnel files of the two inspectors material which is the subject of the present appeal. The Administrative Law Judge ruled that he was without authority to compel disclosure of the documents which Columbia sought but stayed proceedings so that Columbia might try to obtain the material by initiating a Freedom of Information Act (FOIA) suit in the district court. Columbia filed such a suit and the district court temporarily restrained USDA from proceeding with the administrative action against Columbia. After much preliminary skirmishing in the district court, unnecessary to relate here, the court examined the personnel files *in camera*. In a memorandum opinion filed on June 16, 1976, the district court noted that Columbia sought the material in the files in the hope that it would tend to prove at the administrative proceeding that Columbia was the victim of extortion, a posture "tending to mitigate its conduct".[1] The court was of the opinion that the Freedom of Information Act mandated disclosure of the files unless they fell within the statutory exemption for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy". 5 U.S.C. § 552(b)(6). And the court rightly stated that determination of whether personnel file data fell within or without the exemption provided by § 552(b)(6) required a balancing of "the individual's privacy interest in nondisclosure against the public interest in disclosure". *See Department of the Air Force v. Rose*, 425 U.S. 352, 370–73, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). In striking the balance, the district court first noted that:

"The privacy interests of the individual meat inspectors involved are weighty indeed. The records provide a detailed synopsis of each individual's career within the Department of Agriculture, data about family relationships, financial information and medical records. The rec-

ords therefore contain 'intimate details' of a highly personal nature, *Getman v. NLRB* [146 U.S.App.D.C. 209, 450 F.2d 670], 675 [1971]."

The court characterized the information as of the type which an employee revealed only "with an expectation, if not a promise, of confidentiality". However, the court went on to say that the privacy interest was diminished by the inspectors' involvement in bribery and their resulting convictions, events which "created a legitimate public interest in their careers".

Turning to the public interests to be served by disclosure, the court found several. First, "[i]f the records sought assist Columbia in showing that it is entitled to continued receipt of meat and poultry inspection services" Columbia's enhanced defense would serve the public interest in keeping an adequate flow of meat and poultry products. The court also reasoned that the public had a substantial interest in correct administrative determinations, an interest evidently to be served by enlarging Columbia's right to discovery. Lastly, the court reasoned that:

"the public has an interest in whether public servants carry out their duties in an efficient and law-abiding manner. Thus, there is a public interest in records of employees who abuse their positions to determine whether the agency's personnel evaluation and supervision procedures are working well."

The court concluded:

"In general, for records relating to the evaluation and advancement of [the inspectors] the public interest in disclosure outweighs the privacy interest in nondisclosure. For medical records, on the other hand, the privacy interest outweighs the public interest in disclosure. Because of the great number of records submitted and examined by the court *in camera*, the court will merely list without further discussion those records which must be dis-

---

1. In its brief Columbia considerably overstates matters when it says that the district court "recognized the exculpatory nature of those portions of the personnel files ordered dis-

closed to the extent that they would substantiate Columbia's position that it had been the victim of harassment by meat and poultry inspectors."

closed, upon consideration of the contents of each record and the principles outlined above."[2]

While the district court was correct that the public has a legitimate interest in the careers of the two inspectors, we think it should not have characterized this in terms of the public's interest in an adequate meat supply (supposedly advanced by enhancing Columbia's chances of success in the administrative proceeding) nor in a general concern for "correct administrative determinations". So labelling the interests affected came close to suggesting that the FOIA creates a right to maximum discovery in agency enforcement proceedings. However, it is settled that the disclosure provisions of FOIA are not a substitute for discovery and a party's asserted need for documents in connection with litigation will not affect, one way or the other, a determination of whether disclosure is warranted under FOIA. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975); *New England Medical Center Hospital v. NLRB*, 548 F.2d 377, 383 (1st Cir. 1976). "The Act is fundamentally designed to inform the public about agency action and not to benefit private litigants." *Sears, Roebuck & Co., supra.* While maximum discovery in a contested administrative proceeding may arguably advance the truth-seeking process, it may also enable a wrongdoer to play for time and divert attention from his own misconduct by conducting a lengthy collateral suit in the federal court. *Cf. New England Medical Center v. NLRB, supra.* In any event, there is no evidence that Congress in enacting the FOIA was focussing on the pros and cons of enhanced discovery in adversarial agency proceedings. Provision for more extensive discovery in the different types of agency litigation is primarily a matter either for agency regulation or separate Congressional determination. To the extent that the public interests in an adequate meat supply and fair administrative proceedings are just a restatement of Columbia's private interest in enlarged discovery, we think that these asserted "public interests" are unrelated to FOIA's purpose of "inform[ing] the public about agency action" and are therefore of little weight in determining whether to order disclosure. *See Committee on Masonic Homes v. NLRB*, 556 F.2d 214, 220 (3d Cir. 1977).

We agree, however, with the district court that "the public has an interest in whether public servants carry out their duties in an efficient and law-abiding manner" and therefore, in these circumstances, has a legitimate curiosity as to the two meat inspectors' careers. Ordinarily the individual careers of public servants would be of small general interest, *cf. Campbell v. United States Civil Service Commission*, 539 F.2d 58, 62 (10th Cir. 1976), but the scandal in which Columbia and the inspectors participated was far-reaching and of great notoriety. To forestall similar occurrences, the public has an interest in discerning how the officials conducted themselves prior to their discharge for bribery, how well they were supervised, and whether USDA or any of its other personnel were chargeable with any degree of culpability for their crimes. In particular, the public has an interest in knowing whether companies like Columbia were the victims of official extortion or whether the corrupt inspectors were enticed into their misconduct by the companies. While it cannot be known to what extent disclosure of documents to Columbia for use in this administrative proceeding will actu-

---

2. The documents listed in the appendix to the district court's opinion were described as follows:
"Employee appraisals"
"Notification[s] of Personnel Action—Reassignment"
"Notification[s] of Personnel Action—Promotion"
"Reassignment[s] & Change in Headquarters Career—Conditional Appointment"

"Appointment Affidavits"
"Application[s] for Federal Employment"
"Security Investigation Data for Non-Sensitive Position"
"Statement of Prior Federal, Civilian and Military Service and Determination of Competitive Status"
"Veteran Preference Claim"
"Supervisor's Appraisal Report[s]"

ally so inform the public at large, Columbia's rights are not lessened, any more than they are enhanced, by the private purposes for which the documents are sought. We conclude that there is a relevant public interest, which Columbia is entitled to enforce, in production of at least some of the documents. We are also satisfied that the court did not abuse its discretion in selecting as it did among the particular records. We see no evidence that its mistaken reference to a broader discovery rationale than is warranted affected its balancing of the personal privacy interests of the two men against the very substantial public interest in full disclosure of evidence that might bear on the integrity and competence of the agency for which they worked.[3] We therefore affirm the court's order that the designated documents be disclosed to Columbia.

The USDA also appeals from the district court's order enjoining, until disclosure is made, the administrative proceedings which threaten to authorize termination of Columbia's inspection services. In *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 20, 94 S.Ct. 1028, 1038, 39 L.Ed.2d 123 (1974), the Court held that courts should not enjoin renegotiation proceedings pending the resolution of an asserted FOIA claim as the "effect would be that renegotiation, and its aims, would be supplanted and defeated by an FOIA suit". However, the Court declined to go so far as to rule that Congress in enacting the FOIA and providing certain remedies therein,

meant to divest courts of their inherent equitable powers. Thus the court below was not without power to issue collateral injunctive relief if circumstances warranted. The question is whether it abused its discretion in entering such an injunction in these circumstances.

As noted, FOIA was not enacted to provide litigants with an additional discovery tool. *Sears, Roebuck & Co., supra; Bannercraft Clothing, supra* at 24, 94 S.Ct. 1028; *New England Medical Center Hospital, supra.* It follows that the very serious step of enjoining an agency proceeding should not be taken merely because the maximum degree of disclosure permitted by the FOIA has not been ordered in time for possible use in that ongoing agency proceeding. We think it must ordinarily be demonstrated, at least, that without access during the proceeding to the information sought, the litigant faces a probability of. very serious, specific injury which cannot be averted by any of the administrative remedies available in the course of the proceeding. *See Bannercraft Clothing, supra* at 24, 94 S.Ct. 1028.

In the present case Columbia claims that it will be unable to assert the Administrative Law Judge's refusal to order disclosure of the documents as a defense to judicial enforcement of a USDA order depriving it of inspection services. Even accepting this as true,[4] Columbia has

---

**3.** Agency material is disclosable in the absence of a clear showing of exemption. *Ditlow v. Shultz*, 170 U.S.App.D.C. 352, 355, 517 F.2d 166, 169 (1975); 5 U.S.C. § 552(a)(4)(B); *see Campbell v. United States Civil Service Commission*, 539 F.2d 58, 61 (10th Cir. 1976); *Robles v. EPA*, 484 F.2d 843, 846 (4th Cir. 1973). The "personnel and medical files", mentioned in § 552(b)(6) are exempt only to the extent a court finds that disclosure of the particular materials in issue will amount to a "clearly unwarranted" invasion of privacy. *See Department of the Air Force v. Rose*, 425 U.S. 352, 371–73, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). We have reviewed the files in question and do not find that the material ordered to be disclosed will cause any special embarrassment to the individuals affected such as might outweigh the beneficial effect upon public confi-

dence of knowing that nothing of possible relevance is being suppressed.

**4.** It would appear, as the Government now urges (although it took the opposite tack earlier) that 9 C.F.R. 335.23–2 gives the USDA ALJ subpoena power over relevant and material documents in USDA's files. If the ALJ could have subpoenaed the documents had he found them relevant, a refusal to do so on the grounds of lack of authority could be legal error, reviewable at a later stage under 5 U.S.C. § 706(2)(D) which provides that the reviewing court may "set aside agency action, findings and conclusions found to be . . . (D) without observance of procedure required by law;" *see Union of Concerned Scientists v. AEC*, 163 U.S.App.D.C. 64, 77, 499 F.2d 1069, 1082 (1974). While we do not decide on this

still not shown a particularized need for the documents, the frustration of which will result in irreparable harm. The irreparable injury which Columbia sees at the end of the road is forced bankruptcy when its inspection services are withdrawn. But its inability to use the material sought in this suit in the administrative proceeding is linked solely by speculation and conjecture to that dire result. It is speculative whether routine personnel evaluations will show that USDA was chargeable with knowledge of its inspectors' illegal activities or that its inspectors were engaged in extortion and that, therefore, Columbia should prevail. Perhaps the best that can be said for an injunction here is that in view of the criminal convictions of the inspectors, and of numerous colleagues, it is not undesirable that the administrative proceeding be conducted after settlement of the FOIA issue so as to avoid any possible appearance of governmental "cover-up".

While the question of whether or not the court abused its discretion in enjoining the agency proceeding is in our view exceedingly close, it is now largely academic: now that we have affirmed the district court's disclosure order, the injunction will have little further effect. Once the material is disclosed, the injunction will cease to apply, and the administrative proceeding will go forward. Under all the circumstances, we are of the opinion that the district court's judgment should not at this time be disturbed, but we emphasize that injunctions of this nature are not to be entered routinely.

*Affirmed.*

basis, the likelihood that Columbia may resist on direct appeal any adverse order entered in violation of discovery rights under agency regulations suggests a reason for denying collateral equitable relief at this time. *See, e. g., Sterling Drug, Inc. v. FTC*, 146 U.S.App.D.C. 237, 249, 450 F.2d 698, 710 (1971).