Jeffrey S. KASSEL, Ph.D.

v.

UNITED STATES VETERANS' ADMINISTRATION; Thomas Mulvey, Paul Lamberti, Robert Cisler, in their individual and official capacities; United States of America.

Civ. No. 87–217–D.

United States District Court,
D. New Hampshire.

March 17, 1989.

---

Peter A. Meyer, Concord, N.H., for plaintiff.

Gretchen Leah Witt, Asst. U.S. Atty., Concord, N.H., for defendants.

## ORDER

DEVINE, Chief Judge.

This is a civil action filed by Jeffrey Kassel against the United States Veterans' Administration and three present or former officials of the Veterans' Administration Medical Center in Manchester, New Hampshire ("VA" or "Manchester VA"). Jurisdiction is founded on 5 U.S.C. § 552a(g) and 28 U.S.C. §§ 1331, 1343, and 1346(b). On February 4, 1988, 682 F.Supp. 646, the Court issued an Order granting in part and denying in part the defendants' motions for summary judgment and to dismiss.[1] The parties now return to clarify that Order and resolve the remaining claim in dispute. A summary of relevant facts follows.

Jeffrey S. Kassel, Ph.D., has been employed as a clinical psychologist by the United States Veterans' Administration since 1971. In 1977 he was transferred to the VA Medical Center in Manchester. Dr. Kassel asserts that he has been continually harassed by his employer since July 1979, Complaint ¶ 43, when he successfully pursued a grievance against the hospital's chief of psychiatry. Affidavit of Jeffrey Kassel at 1. According to Dr. Kassel, harassment came in many forms, including negative performance evaluations, threats of discharge, transfers, numerous letters detailing alleged deficiencies in his work, reassignments, and an unlawful termination in August 1982.[2]

The most recent incident, and the central event giving rise to the instant litigation, occurred when Dr. Kassel agreed to be interviewed for a special report entitled "Remembering the War" that appeared in the April 26, 1985, issue of *USA Today*. The report included a state-by-state survey of contemporary views on the Vietnam War. In its entirety, the New Hampshire entry read as follows:

> 'We've become a nation of hand wringers,' says Jeff Kassel, 41, of Manchester. 'It's amusing that vets feel they are the victims when the Vietnamese had the napalm and ... bombs ... dropped on them.' Kassel, who had a student deferment, says winning or losing 'depends on whether it's the vet who lost his legs or the chairman of ... Bell Helicopters.'

The VA began receiving negative responses to the article shortly after publication. On May 8, 1985, the VA appointed a factfinding Board of Inquiry to determine "whether our ability to offer services has been impaired by [Dr. Kassel's] statement." Plaintiff's Exhibit 7 (May 8, 1985, letter from William H. Kelleher establishing Board of Inquiry). Two of the Board's three members questioned their participation on the panel: both "had been in-

---

**1.** Specifically, defendants' motions for summary judgment were granted as to Count III (right of privacy—federal claim), and Count VI (defamation). Summary judgment was denied as to Count IV (free speech) and Count V (invasion of privacy—state claim). Defendant United States' motion to dismiss or, in the alternative, for summary judgment on Count II (Federal Tort Claims Act) was denied to the extent that plaintiff has stated a claim for intentional infliction of emotional distress caused by the release of truthful information from his confidential personnel file, in contravention of the Privacy Act, 5 U.S.C. § 552a.

**2.** Dr. Kassel was reinstated with back pay following arbitration.

volved in previous situations with Dr. Kassel," and both "were known as having ... concerns about Dr. Kassel's previous functioning." Plaintiff's Exhibits 10 (deposition of Board member Dennis Forgue at 128–29) and 11 (deposition of Board member Jacob DeJong at 4–6). Despite these concerns, the Board continued as originally constituted.

On May 24, 1985, the Board of Inquiry issued its report. The report cited the "enormous attention" attracted by the *USA Today* quote; it stated that "[t]he most common responses from those interviewed have been of outrage and a perception of insensitivity on the part of Dr. Kassel in his view towards the plight of the Vietnam veteran," Board of Inquiry Report at ¶ 4(L), and it concluded that "Dr. Kassel no longer has any degree of credibility in the performance of his responsibilities in the Mental Hygiene Clinic," *id.* at ¶ 6(C). While the Board found that the VA's reputation had not suffered as a result of the *USA Today* article, it warned that the credibility of the VA would "no doubt be directly affected by the way in which the administration of this Medical Center deals with this matter." *Id.* at ¶ 6(D). Accordingly, the Board recommended that Dr. Kassel "be removed from any responsibilities putting him in direct or indirect contact with Vietnam veterans." *Id.* at ¶ 7.

In response to the Board of Inquiry report, the VA decided to discharge Dr. Kassel and to make public the reasons why. Statements about the proposed discharge were issued to the press. A proposed letter of removal (marked "FOR OFFICIAL USE ONLY") and the Board of Inquiry report were both released. Defendant Mulvey, the VA's Chief of Personnel, spoke with *Manchester Union Leader* reporter Joel Blumenthal. That interview included an extended discussion of Dr. Kassel's prior discharge in 1982. Information provided by defendant Mulvey appeared in the *Union Leader* and the *Concord Monitor.*

On June 10, 1985, *USA Today* published a correction of the original quote from Dr. Kassel, making it clear that that quote was not entirely accurate.

In fact, [Dr. Kassel] was quoting what he'd read in another news story, which said: 'Vietnamese Vietnam Veterans think it's amusing that American Vets feel they are the victims when the Vietnamese had the Napalm and ... bombs dropped on them.'

The VA continued to discuss the case with members of the press, maintaining that the *USA Today* correction "did not have any effect in terms of diminishing the negative impression created by the comments." Declaration of Robert Cisler at 9. Shortly after the correction appeared, however, the VA decided not to discharge Dr. Kassel. A statement issued by the VA on June 7, 1985, announced,

Having reviewed all the material related to the letter of proposed removal of Dr. Jeffrey Kassel, Medical Center Director William H. Kelleher today decided that the action will not take place. Kelleher indicated that the clarification issued by USA Today in its June 10 publication was a major factor in its decision.

Memorandum in Support of Defendants' Motion for Summary Judgment and for Reconsideration (hereinafter, "Defendants' Memo") Exhibit B (*The Union Leader*, June 22, 1985).

On July 17, 1985, the VA decided to transfer Dr. Kassel to a research position in Puerto Rico. After Dr. Kassel objected, the VA transferred him instead to a clinical position in Bedford, Massachusetts. Defendant's Exhibit F (declaration of James T. Krajeck); Complaint ¶ 14. Dr. Kassel unsuccessfully challenged the transfer through arbitration. Defendant's Exhibit H.

## I. Privacy Act

Defendants first move for summary judgment on plaintiff's Privacy Act claims (Count I). In Count I, plaintiff asserts that defendants have violated the federal Privacy Act, 5 U.S.C. § 552a, by willfully or recklessly (1) disclosing protected information about Dr. Kassel and (2) violating certain provisions of the Act that set standards for gathering and maintaining government records.

Defendants will prevail if there is no genuine issue as to any material fact and if they are entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. Summary judgment will not lie if the dispute about a material fact is "genuine"; that is, if the evidence is such that a reasonable jury could return a verdict for Dr. Kassel. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). With this standard in mind, the Court addresses plaintiff's Privacy Act claims seriatim.

### A. Disclosure

The Privacy Act prohibits federal agencies from disclosing documents "contained in a system of records" without the prior written consent of the individual to whom the record pertains. 5 U.S.C. § 552a(b). An agency does not violate the Act, however, when it discloses information which it is required to disclose by the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* § 552a(b)(2). The FOIA requires government agencies to make available to the public most of the information maintained in their files, with nine specific "exemptions". *See* 5 U.S.C. §§ 552(b)(1)–(9). Pertinent here is exemption 6, which excepts from mandatory disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." § 552(b)(6).

Exemption 6 imposes a two-part test. The first part requires the Court to determine that the challenged information was derived from personnel files, medical files, or other "similar files". The second part requires the Court to balance public against private interests to determine whether disclosure would constitute a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *Aronson v. United States Dept. of Housing and Urban Dev.,* 822 F.2d 182, 185 (1st Cir.1987). The Court now applies this test to the specific information allegedly released by defendants about which plaintiff complains.

### 1. Board of Inquiry Report

The parties agree that exemption 6 applies to release of the Board of Inquiry report. Thus, the first part of the test is not at issue.

The second part of the exemption 6 test requires the Court to balance the VA's obligation to release the Board's report against Dr. Kassel's privacy interest in information contained therein. The VA's obligation here was significant. Ordinarily, the individual careers of public servants are of little interest to the general public. *Columbia Packing Co. v. United States Dept. of Agriculture,* 563 F.2d 495 (1st Cir.1977) (employment records of former federal meat inspectors properly released when inspectors became subjects of public interest following convictions for bribery). Dr. Kassel's career, however, became a subject of considerable interest. That interest was manifested in numerous newspaper articles and letters. Those concerned with the treatment of Vietnam veterans had a legitimate interest in learning the circumstances surrounding Dr. Kassel's statement, the possibility of anti-Vietnam veteran bias which the statement suggested, and the action, if any, taken by the VA to address the problem. Directly relevant to the public interest involved was the investigation conducted by the agency. *See id.*

On Dr. Kassel's side of the balance are similarly weighty considerations. Employees have a privacy interest in their employment history. *Department of the Air Force v. Rose,* 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976); *Stern v. FBI,* 737 F.2d 84, 91 (D.C.Cir. 1984). That interest is especially strong when free speech issues are implicated. *E.g., Reuber v. United States,* 829 F.2d 133, 142 (D.C.Cir.1987) (as a general rule, agencies cannot maintain records concerning the manner in which First Amendment rights are exercised).

After carefully considering the circumstances attending the release of the Board's report, the Court concludes that the exemption 6 balance tips in favor of the VA. The Board's report contained no in-

formation that would cause Dr. Kassel "special embarassment ... such as might outweigh the beneficial effect upon public confidence of knowing that nothing of possible relevance is being suppressed." *Columbia Packing Co., supra,* 563 F.2d at 500 n. 3. No "intimate details" of a "highly personal" nature were revealed in the Board's report. *Getman v. N.L.R.B.,* 450 F.2d 670, 675 (D.C.Cir.1971). The Court concludes that defendants did not commit a "clearly unwarranted invasion" of Dr. Kassel's privacy by releasing the Board of Inquiry report. Thus, the release of the Board of Inquiry report was not excepted from the broad disclosure provisions of the FOIA, and, accordingly, the Privacy Act was not violated by its release.

### 2. Proposed Removal Letter

Again, the parties agree that disclosure of the proposed removal letter is subject to the provisions of exemption 6. The first part of the test is therefore not in dispute.

■ What is disputed, however, is the weight to be accorded the interest of each party. Defendants argue that the public's powerful interest in learning the details of the Kassel case and the VA's response to the quoted statements outweighs Dr. Kassel's privacy interest in the disclosed documents. Here the Court cannot agree. Although the public may have had an interest in knowing that Dr. Kassel was to be discharged, the public had no interest in seeing his letter of termination, which contained detailed allegations of specific shortfalls in his job performance. Information contained in the removal letter was significantly more "embarassing", *see Columbia Packing, supra,* than the information contained in the Board's report. For example, the letter stated:

> The impact of your statement has destroyed your credibility and usefulness as an efficient clinician in the treatment of psychological illnesses of our veteran patients or to function as an effective member of the interdisciplinary team approach to mental health. Your judgment in expressing your opinions has had a negative impact upon the credibility of

this Medical Center and our ability to efficiently provide mental health services.

Indeed, the agency itself acknowledged the sensitivity of that document by noting on the letter's first page that it was "FOR OFFICIAL USE ONLY". Dr. Kassel's privacy interest in the removal letter outweighed the public's interest in that document.

Defendants also argue that summary judgment in their favor is required because the plaintiff cannot prove that they released the removal letter. *See* Defendants' Memo at 12–13 (and declarations cited therein). To the contrary, the Court finds that Dr. Kassel has presented sufficient evidence to permit a reasonable jury to make such a finding. The June 13, 1985, *Boston Globe* article quotes "a 'letter of proposed removal' written last Friday and made public yesterday." This quote implies that the letter was written and released by the same party. The *Boston Globe* quotation supports Dr. Kassel's contention that defendants did release the disputed letter. Summary judgment will therefore not be granted as to release of the letter of proposed removal.

### 3. The Martin Case

Plaintiff also objects to the release of information about his 1982 discharge from the VA. Complaint, Count I, ¶ 23. That discharge resulted from allegations of incompetence brought against Dr. Kassel by Roger and Patricia Martin, former patients at the Manchester VA. Apparently, the Martins sued for injuries they claimed to have suffered as a result of marriage counseling sessions with Dr. Kassel. The VA paid the Martins between $50,000 and $75,-000 to settle the case. The VA also fired Dr. Kassel, who brought his employer to arbitration and won reinstatement.

Almost three years later, in response to questions by a reporter investigating the *USA Today* incident, defendant Mulvey, who was the VA's Chief of Personnel at the time of the Martin incident and when the *USA Today* article was published, provided information about the Martin case.

Details of that incident appeared in a June 16, 1985, *Manchester Union Leader* article.

 Defendants first argue that defendant Mulvey did not violate the Act by discussing the Martin case with the *Union Leader* reporter because Mulvey did nothing more than confirm information which the reporter already had. The Privacy Act only protects against disclosure of previously undisclosed information. *FDIC v. Dye*, 642 F.2d 833, 836 (5th Cir.1981). Thus, defendants argue that confirming information already known is not a "disclosure" protected by the Act. But the evidence suggests that defendant Mulvey did more than just confirm information. In his declaration, Mulvey admits that he provided dates related to the 1982 discharge. The *Union Leader* article contains numerous dates of key events relevant to the Martin matter. In addition, as reported in the article, Mulvey told the *Union Leader* that "there is nothing in [plaintiff's] personnel file of a derogatory nature," but "there have been instances of less than desirable relations between Dr. Kassel and his supervisor." Whether Mulvey did more than merely confirm information is thus a question best left to be resolved by the trier of fact.

 Defendants next argue that Mulvey did not violate the Act because Dr. Kassel's personnel file was not the source of the disclosed information. The purpose of the Privacy Act's nondisclosure provision "is to preclude a system of records from serving as the *source* of personal information about a person that is then disclosed without the person's prior consent." *Olberding v. United States Dept. of Defense*, 564 F.Supp. 907, 913 (S.D.Iowa 1982), *aff'd* 709 F.2d 621 (8th Cir.1983). Only information *retrieved* from a system of records is protected from disclosure under the Privacy Act. *Saverese v. United States Dept. of HEW*, 479 F.Supp. 304, 308 (N.D.Ga.1979), *aff'd* 620 F.2d 298 (5th Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed. 2d 801 (1981); *Olberding, supra*, 709 F.2d at 622.

 Defendants argue that none of the information they disclosed about the Martin case was retrieved from Dr. Kassel's file. Defendant Mulvey states that the limited information he provided was "entirely from my memory of the Martin situation, with which I had been involved." Mulvey Declaration at 11. Moreover, defendants assert that there was no information about the Martin case in Dr. Kassel's file; records of the Martin case were "purged" from Dr. Kassel's file pursuant to the arbitrator's order that resolved the case.

As a general rule, courts have held that independent recollections and opinions are not covered by the Privacy Act. *See Krowitz v. Department of Agric.*, 641 F.Supp. 1536, 1545 (W.D.Mich.1986), *aff'd* 826 F.2d 1063 (6th Cir.1987); *Thomas v. United States Dept. of Energy*, 719 F.2d 342, 345 (10th Cir.1983); *Olberding, supra*, 709 F.2d at 622. An exception has been made, however, where an agency official uses the government's information-collecting methods to acquire information and then discloses that information in an unauthorized fashion without physically retrieving it from the file. *Bartel v. FAA*, 725 F.2d 1403, 1410 (D.C.Cir.1984).

> [I]t would hardly seem an 'intolerable burden' to restrict an agency official's discretion to disclose information in a record that he may not have read but that he had a primary role in creating and using, where it was because of that record-related role that he acquired the information in the first place.

*Id.* at 1411.

The extent of defendant Mulvey's participation in the Martin matter has not been made clear. Plaintiff has, however, presented a letter written by Mulvey under date of April 20, 1984, which suggests that Mulvey played a primary role in the Martin incident. *See* Memorandum in Support of Plaintiff's Objection to Defendants' Motion for Summary Judgment and for Reconsideration (hereinafter "Plaintiff's Memo"), Attachment 6. In that letter, Mulvey, as Chief of Personnel, informed plaintiff of the agency's intention to comply with the arbitrator's decision. It appears that Mul-

vey played a key role in the Martin case. Defendants therefore cannot rely on the retrieval rule to avoid liability for release of that information.

Defendants next argue that the Act was not violated because federal regulations required them to release some of the disclosed information. But plaintiff has not challenged the release of any information which the agency was required to make available pursuant to 5 C.F.R. § 293.311(a).[3] Section 293.311(a) makes generally available to the public the following information about government employees: (1) name; (2) present and past position titles; (3) present and past grades; (4) present and past salary rates; (5) present and past duty stations; and (6) position descriptions. Plaintiff does not complain that the VA improperly issued information that falls within any of the above categories. Section 293.311(a) therefore does not support defendant's motion for summary judgment.

■ Defendants also argue that federal agencies are justified in disclosing personnel information about government employees who have been investigated for improper or illegal acts. For example, in *Department of the Air Force v. Rose*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976), the Supreme Court affirmed an order requiring the Air Force to release redacted case summaries of honor and ethics hearings; in *Columbia Packing Co., supra*, 563 F.2d 495, the court ordered disclosure of personnel records because the employees involved had previously been convicted of bribery; and the Army's decision to issue a press release was upheld in *Cochran v. United States*, 770 F.2d 949 (11th Cir.1985), following a military investigation into charges that an officer had requisitioned a military aircraft for personal use.

However, essential to the decisions in each of the above-cited cases was the unlawful or unethical behavior which gave rise to the documents released to the public. No similar charges were brought against Jeffrey Kassel. Although Dr. Kassel's statement to *USA Today* was contro-versial, it was neither criminal nor unethical. Moreover, in the "public trust" cases cited above, disclosure was warranted in part because the courts believed that dissemination of such information would dissuade other public officials from abusing their positions.

To forestall similar occurrences, the public has an interest in discerning how the officials conducted themselves prior to their discharge or bribery, how well they were supervised, and whether [the agency] or any of its other personnel were chargeable with any degree of culpability for their crimes.

*Columbia Packing, supra,* 563 F.2d at 499. Jeffrey Kassel exercised his right to free speech by talking with a reporter from *USA Today*. To rule that the controversy arising from the exercise of that constitutional right justified broad dissemination of information culled from his personnel file would only serve to inhibit other government employees from speaking with members of the press. A sanction of this nature would have a chilling effect on the exercise of the most carefully guarded First Amendment right. *See Connick v. Myers,* 461 U.S. 138, 145, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983) ("speech concerning public affairs is more than self-expression; it is the essence of self-government").

In sum, because plaintiff has provided sufficient evidence to persuade a reasonable jury that defendants released the proposed letter of removal and information about Dr. Kassel's prior discharge, and because the Court cannot rule as a matter of law that such disclosure did not violate the Privacy Act, defendants' motion for summary judgment must be and herewith is denied.

## B. Procedural Requirements

Plaintiff also asserts that numerous procedural requirements of the Privacy Act were violated by the manner in which the VA collected and then released information without his consent. Plaintiff charges that

---

**3.** Defendants incorrectly locate this provision at § 294.702.

defendant willfully violated 5 U.S.C. § 552a(e)(1), (2), (3), (5), (6), (7), and (8). Defendant moves for summary judgment on all subsections except (e)(8).

### 1. § 552a(e)(1)

Although plaintiff has alleged that subsection 1 has been violated, Complaint at ¶¶ 16, 18, he has provided no factual basis for the allegation. Each agency maintaining a system of records is required by 5 U.S.C. § 552a(e)(1) to

> maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the President.

Plaintiff points to no unnecessary or irrelevant information contained in his records. Moreover, plaintiff has either decided not to pursue this claim or has forgotten that it was asserted. In his memorandum objecting to defendants' motion for summary judgment, plaintiff argues that defendants' actions violate six subsections of section 552a(e). Subsection (1) is not mentioned. Accordingly, summary judgment is granted defendants as to this subsection of the Act.

### 2. § 552a(e)(2)

■ Plaintiff next points to section 552a(e)(2), which requires federal agencies that maintain systems of records to

> collect information to the greatest extent practicable directly from the subject individual when the information may result in adverse determinations about an individual's rights, benefits and privileges under federal programs.

Defendants assert that the report was prepared to assess the damage caused by the statements published in *USA Today*, not to justify a personnel action against Dr. Kassel. Defendants argue that the Board of Inquiry report is not the type of document to which this provision applies. The plain

language of the statute suggests otherwise —subsection (e)(2) is not limited to those documents gathered in contemplation of a personnel action. Instead, this provision of the Privacy Act applies to information that *may result* in adverse determinations. The Board of Inquiry report was a factor in the VA's decision to take action against Dr. Kassel. Subsection (e)(2) therefore applies.

■ Plaintiff argues that the VA did not collect information from him "to the greatest extent practicable" under the circumstances of this case.[4] He does not dispute that members of the Board talked to him before completing their report.

■ Instead, plaintiff chides the Board for waiting until the last day of the investigation to speak with him. It is not clear, however, how that fact relates to this subsection of the Act. The Board was convened to determine how Dr. Kassel's statements affected the VA's image. Plaintiff has presented nothing other than conclusory allegations that the Board did not question Dr. Kassel "to the greatest extent practicable." Accordingly, plaintiff has failed to support his claim that defendants violated section 552a(e)(2).

### 3. § 552a(e)(3)

■ Plaintiff next alleges a violation of section 552a(e)(3). In pertinent part, that provision requires the Government to inform each person from whom it collects information of "the principal purpose or purposes for which the information is intended to be used." § 552a(e)(3)(B). Subsection (e)(3) manifests a fundamental principle of the Act; that is, "to let citizens know why or for what reasons the United States is asking them questions." *Usher v. Secretary of HHS*, 721 F.2d 854, 856 (1st Cir.1983) (quoting *Saunders v. Schweiker*, 508 F.Supp. 305, 309 (W.D.N.Y.1981)). The propriety of the Board's investigation under subsection (e)(3) depends on the pur-

**4.** Dr. Kassel also complains that the Board ignored his request that they interview the *USA Today* reporter, as well as a witness to the interview. The Court fails to see the significance of this argument. Whether the Board respected Dr. Kassel's request to interview oth-

ers has nothing to do with the requirements of 5 U.S.C. § 552a(e)(2). That subsection only required the Board to gather information "to the greatest extent practicable" directly from the subject.

pose underlying the collection of information about Dr. Kassel.

Defendants argue that the purpose of the Board's investigation was to determine the impact of Dr. Kassel's statements on the VA's image and ability to serve the veteran community. Plaintiff argues that the principal purpose of the investigation was to prepare a case against Dr. Kassel. In deciding a motion for summary judgment, the record must be viewed in the light most favorable to the nonmoving party, *Oliver v. Digital Equip. Co.*, 846 F.2d 103, 105 (1st Cir.1988), to determine whether a genuine issue of material fact has been raised. Rule 56(c), Fed.R.Civ.P. An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Given the history of conflict described by Dr. Kassel, the Court finds that a reasonable jury could conclude that the Board's real mission was to create a foundation for taking adverse action. If that is the case, the Board's failure to so inform each of the individuals from whom they gathered information violated § 552a(e)(3). Accordingly, summary judgment on this claim must be denied.

### 4. § 552a(e)(5)

Federal agencies are required by 5 U.S. C. § 552a(e)(5) to

maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination.

This subsection of the Privacy Act requires federal agencies "to take reasonable steps to insure the informational quality of the records which it relies upon in making determinations about an individual." *Clarkson v. IRS*, 678 F.2d 1368, 1377 (11th Cir. 1982), *cert. denied*, 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 533 (1987). Plaintiff asserts that the investigation was not reasonable because (1) it was founded on the "false premise" that he actually made the remarks published on April 26, 1985, and (2) the Board's efforts were "half hearted" since the Board actually sought to build a case against Dr. Kassel, not to create a balanced record to support a fair review.

■ The facts do not support plaintiff's first proposition. Once the Board learned of Dr. Kassel's claim that he had been misquoted, it pursued the investigation with that possibility in mind. Board member Forgue states that he asked those he spoke with if that would make a difference in their assessment. *See* Declaration of Dennis Forgue, ¶ 10.

Plaintiff's second proposition has more merit. A review of the Board's report suggests that Dr. Kassel may be right. The report included numerous statements of outrage and criticism, but nothing reported in that document provided any other perspective. Dr. Kassel has presented letters and editorials which, unlike the comments cited in the Board's report, defend his conduct and criticize the VA. One writer, Carey T. Noble, addressed his comments to William Kelleher, Director of the Manchester VA.

Dear Mr. Kelleher,

If our Commander in Chief can characterize German soldiers as victims of Naziism, in his statement about Bitberg, why can't a VA employee express his opinion that Vietnamese veterans as well as American veterans suffered in the Vietnam War?

Maintaining some objectivity is necessary in his role as a clinical psychologist.

Plaintiff's Memo, Attachment 17. A writer from Watertown, Massachusetts, urged defendant Cisler to "[k]eep this man on your staff, he is a provocative addition." *Id.* Moreover, editorials in two local papers sharply criticized the VA. "Judging by the nature of the comments made by Kassel, the V.A. officials appear to be using an elephant gun in an attempt to swat a flea." Plaintiff's Memo, Attachment 18 (*The Manchester Journal*, June 19, 1985). "As best we have been able to piece it together, the Kassel case is an example of judging some-

one too quickly and too harshly on the basis of evidence that is both too narrow and too flawed to be meaningful." *Id.* (*Concord Monitor*, June 18, 1985).

▉▉▉ Although the letters and editorials noted above appeared after the Board's report was completed, it is not unreasonable to infer that those opinions existed prior to completion of the report. The absence of the viewpoint they express from the report supports plaintiff's claim. The Court concludes that a reasonable jury could find that the Board's report was inaccurate or incomplete. Accordingly, plaintiff's claim under § 552a(e)(5) survives the motion for summary judgment.

### 5. § 552a(e)(6)

Before disseminating any record about an individual, 5 U.S.C. § 552a(e)(6) requires federal agencies to "make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes."[5]

Plaintiff argues that information about the prior discharge which defendant Mulvey disclosed to *Manchester Union Leader* reporter Blumenthal was not properly reviewed prior to dissemination, in violation of subsection (6). Defendants make no claim that they made any effort to verify the information about Dr. Kassel's prior discharge. To the contrary, defendants claim that no such information existed in the file and that defendant Mulvey did nothing more than answer questions asked by the *Union Leader* reporter. For the reasons set forth above, *see* I.A.3. above, resolution of plaintiff's claim under this subsection concerning the Martin matter requires the Court to decide an issue of material fact. Accordingly, defendants' motion is denied as to subsection 6.

### 6. § 552a(e)(7)

▉▉▉ Similarly, the Court cannot grant defendants' motion with regard to section 552a(e)(7). Subsection (e)(7) provides that no agency shall maintain a record

describing how any individual exercises his rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity.

In support of its motion, defendants argue only that liability is not warranted because, assuming *arguendo* that they did violate subsection (e)(7), such violation was neither willful nor intentional. For the reasons set forth in the section that follows, the Court finds that a genuine factual dispute must be resolved to determine the willfulness of defendants' Privacy Act violations. Accordingly, defendants' motion as to section 552a(e)(7) is denied.

### C. Intent

▉▉▉ Violation of the Privacy Act does not necessarily permit an aggrieved plaintiff to recover damages. Liability for damages is incurred only when an agency violates the Act in a willful or intentional manner, either by committing the act without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act. 5 U.S.C. § 552a(g)(4). To establish a willful or intentional violation of the Act, the agency's action must be considered in its context. *Albright v. United States*, 732 F.2d 181, 189 (D.C.Cir.1984).

Defendants forcefully contend that even if their action violated the Privacy Act, such violation was not willful, and Dr. Kassel cannot be permitted to recover damages. Specifically, defendants argue that it was reasonable for them to believe that the disclosures they made were lawful responses to a legitimate agency concern. Defendants insist that they carefully balanced Dr. Kassel's privacy rights against the public interest in learning about the case before cooperating with reporters and disclosing information about the Board of Inquiry investigation, proposed disciplinary action, or Dr. Kassel's employment history. In addition, defendants argue that any vio-

---

**5.** Expressly excluded from the requirements of this section is information disseminated "pursuant to subsection (b)(2) of this section;" that is, information that the FOIA requires the agency to disclose.

lation of the Privacy Act's information-gathering requirements was *de minimis* and unintended. According to defendants, the purpose of the Board's investigation was to assess the damage caused by Dr. Kassel's quote in *USA Today*, not to build a case against Dr. Kassel. Thus, restrictions on information gathering related to investigations designed to support disciplinary action would not apply here. Defendants also argue that it was not their intention to compile inaccurate or incomplete records; therefore, even if the information they gathered was faulty, Dr. Kassel is not justified in recovering damages. Finally, defendants argue that they did not willfully or intentionally develop records concerning the exercise of Dr. Kassel's rights; the records they developed concerned the VA's ability to perform its mission.

Plaintiff counters by arguing that the disclosures challenged herein must be viewed in the context of his "fractious relationship" with the VA. Plaintiff claims that "the Board of Inquiry was convened to establish a record to support [his] transfer or removal." Specifically, plaintiff supports his claim with the following facts: (1) the Board was composed of members biased against him; (2) the Board failed to speak with critical witnesses, e.g., the *USA Today* reporter; and (3) the Board failed to properly explain its mission to some of those interviewed.[6]

Summary judgment will not lie in defendants' favor unless the Court is convinced that no genuine issue of material fact remains. *See* Rule 56(c), Fed.R.Civ.P. While there is undeniable force to defendants' arguments, those arguments will not prevail at summary judgment unless they demonstrate the absence of a material factual dispute. *See Oliver v. Digital Equip. Corp.*, 846 F.2d 103, 105 (1st Cir.1988). To defeat summary judgment, Dr. Kassel must present sufficient evidence for a jury to return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The Court finds that Dr. Kassel has met his burden. He has presented sufficient circumstantial evidence to permit a reasonable jury to conclude that defendants' actions were taken in willful disregard of Dr. Kassel's Privacy Act rights. Resolution of this issue depends upon an assessment of witness credibility. Where witness credibility is in issue, summary judgment is rarely appropriate. *Stepanischen v. Merchants Despatch Transp. Co.*, 722 F.2d 922 (1st Cir.1983).

In sum, the Court finds and holds that defendants' motion for summary judgment as to the intent of any Privacy Act violations must be and herewith is denied.

## II. Reconsideration of First Amendment Claim

In its previous Order, the Court denied that part of defendants' motion for summary judgment which attacked plaintiff's First Amendment claim. Defendants now move the Court to reconsider that decision in light of the recent United States Supreme Court decision in *Schweiker v. Chilicky*, —— U.S. ——, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988).

The *Chilicky* case is the third Supreme Court decision to address the question of whether money damages are available to remedy the violation of a constitutional right. This line of cases began in 1971, when the Court held that the victim of an unconstitutional search could maintain a suit for money damages against the federal officers who conducted that search. *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Recognizing that the Constitution does not expressly identify a remedy to enforce the rights it creates, the Court reasoned that "where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong

---

**6.** Plaintiff also relies on two additional "facts"; i.e., "The Board's efforts were clearly directed toward *maximizing the impact of the USA Today* article"; and "The Board report as released was inaccurate[,] incomplete, and unfair." These conclusory allegations will not be credited as facts upon which plaintiff's opposition to the motion for summary judgment may be founded.

done." *Id.* at 396, 91 S.Ct. at 2004 (quoting *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)).

▄ *Bivens* does not, however, empower the courts to imply a remedy whenever federal officials violate constitutionally protected rights. The *Bivens* decision permits an award of money damages where Congress has neither expressly created nor expressly prohibited such a remedy and where no "special factors" counsel hesitation in implying such a remedy. *Id.*

One such special factor was identified in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983). In *Bush,* the Court held that a *Bivens* remedy would not be implied for a federal worker whose employment "is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States." *Id.* at 368, 103 S.Ct. at 2406. But *Bush* created another dispute: whether the special factor it found controlling was the comprehensive administrative scheme or the meaningful remedy. The Fourth, Fifth, and Sixth Circuits have held that the mere existence of a comprehensive scheme precludes a *Bivens* remedy. *See Pinar v. Dole,* 747 F.2d 899, 905 (4th Cir. 1984), *cert. denied,* 471 U.S. 1016, 105 S.Ct. 2019, 85 L.Ed.2d 301 (1985); *Braun v. United States,* 707 F.2d 922 (6th Cir.1983); *Broadway v. Block,* 694 F.2d 979 (5th Cir. 1982). But the Seventh, Eighth, and Ninth Circuits have looked beyond the scheme to determine whether the remedy provided for the particular injury at issue is meaningful. The courts in *Cooper v. Kotarski,* 799 F.2d 1342 (9th Cir.1986); *McIntosh v. Weinberger,* 810 F.2d 1411 (8th Cir.1987); *and Egger v. Phillips,* 710 F.2d 292 (7th Cir.), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983), found a *Bivens* remedy appropriate when a federal worker's only remedy, like Dr. Kassel's remedy here, was a complaint to the Office of Special Counsel.

▄ The Supreme Court has now settled this dispute: "Where the design of a government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration," no *Bivens* remedy is available. *Schweiker v. Chilicky, supra,* 108 S.Ct. at 2468. *Chilicky* makes it clear that the statutory remedy available to Dr. Kassel is considered meaningful. Under *Chilicky,* the central question is whether Congress has provided a comprehensive remedial scheme, not whether the remedy applied to the particular injury is meaningful.

The Supreme Court's position is further evidenced by its decision to vacate the judgments in the two leading opinions that extend *Bivens* remedies within the public employment setting. *See McIntosh v. Weinberger,* 810 F.2d 1411 (8th Cir.1987), *vacated sub nom. Turner v. McIntosh,* — U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 898 (1988), and *Kotarski v. Cooper,* 799 F.2d 1342 (9th Cir.1986), *vacated,* — U.S. ——, 108 S.Ct. 2861, 101 L.Ed.2d 897 (1988).

▄ In light of the *Chilicky* decision, the Court concludes that the administrative scheme available to Dr. Kassel precludes his claims for a *Bivens* remedy here. The position adopted by the Court today is further supported by *Spagnola v. Mathis,* 859 F.2d 223 (D.C.Cir.1988) ("*Spagnola II*"). The *Spagnola II* court found that *Chilicky* resolved the confusion manifested in its two contradictory 1986 opinions on the subject. *See Hubbard v. EPA,* 809 F.2d 1 (D.C.Cir.1986), and *Spagnola v. Mathis,* 809 F.2d 16 (D.C.Cir.1986) ("*Spagnola I*").

As we read *Chilicky* and *Bush* together, then, courts must withhold their power to fashion damages remedies when Congress has put in place a comprehensive system to administer public rights, has 'not inadvertently' omitted damages remedies for certain claimants, and has not plainly expressed an intention that the courts preserve *Bivens* remedies. In these circumstances, it is not for the judiciary to question whether Congress' 'response [was] the best response, [for] Congress is the body charged with making the inevitable compromises required in the design of a massive and complex ... program.'

*Spagnola II,* 859 F.2d at 228.

Upon reconsideration in light of the United States Supreme Court's recent pro-

nouncement in *Chilicky*, the Court finds that Dr. Kassel is not entitled to damages for the alleged violation of his First Amendment rights. Since the remedy sought by Dr. Kassel is not available, Count IV of the complaint is dismissed.[7]

### III. Invasion of Privacy

In its February 4, 1988, Order, this Court denied defendants' motion for summary judgment regarding plaintiff's invasion of privacy claim (Count V)[8] because "the Court finds that there is a genuine issue of material fact as to whether defendants exceeded their authority, *not* because of the alleged tortious nature of the activity, but because their discretion to release confidential personnel information may have been removed by federal statute." Feb. 4, 1988, Order at 22. The federal statute to which the Court referred was the Privacy Act, 5 U.S.C. § 552a. In light of the analysis contained in Part I of this Opinion, it should follow that allegations that defendants violated the Privacy Act, supported by sufficient evidence to survive a motion for summary judgment, also preclude summary judgment on the defendants' invasion of privacy claim. Since the earlier order was issued, however, Congress has passed, and the President has signed into law, a bill mandating changes in liability under the Federal Tort Claims Act. Because of those changes, the Court finds it necessary to revise its position: summary judgment is granted as to the federal employees named as defendants on Count V of the complaint.

The Federal Employees Liability Reform and Tort Compensation Act of 1988 was signed into law on November 18, 1988. The statute was passed to clarify the treatment of federal employees named as defendants in tort actions. In pertinent part, the new statute provides as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee. Any other civil action or proceeding for money damages arising out of or relating to the same subject matter against the employee or the employee's estate is precluded without regard to when the act or omission occurred.

28 U.S.C. § 2679(b)(1). Upon certification by the Attorney General that the federal employee named as defendant was acting within the scope of his duties at the time of the incident out of which the claim arose, the United States shall be substituted as the party defendant. 28 U.S.C. § 2679(d)(1). Pursuant to 28 C.F.R. § 15.3, the United States Attorney is authorized to make the certification required of the Attorney General under section 2679(d).

Defendants have submitted the certification of Peter E. Papps, Acting United States Attorney for the District of New Hampshire, which states that "the individual defendants were acting within the scope of their employment as employees of the United States at the time of such incidents." No more is required by the amended statute to protect defendants Mulvey, Lamberti, and Cisler from liability. Accordingly, defendants' motion for summary judgment on Count V is granted as to those three defendants.

The Court also finds and holds that summary judgment should be granted to the United States on Count V. It is axiomatic that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d

---

**7.** Because of the Court's conclusion that *Bush v. Lucas* precludes an action for damages under the circumstances of this case, it is unnecessary to reach the question whether defendants are entitled to assert the defense of qualified immunity.

**8.** In their motion and accompanying memorandum, defendants erroneously refer to this claim as Count IV.

607 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941)); *see also United States v. Lee*, 106 U.S. 196, 27 L.Ed. 171 (1882). The Federal Tort Claims Act, 28 U.S.C. § 1346, manifests the Government's consent to suit when its acts are alleged to violate "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

▮ The Court has allowed Dr. Kassel's state law claims to survive only to the extent that they derive from conduct that violates federal law. In essence, Dr. Kassel must prove that defendants violated a federal statute (the Privacy Act) to support his state law claims. Upon reconsideration, the Court finds that the Government is immune from liability under these circumstances. *See Zabala Clemente v. United States*, 567 F.2d 1140, 1149 (1st Cir.1977), *cert. denied*, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978) (the FTCA "simply cannot apply where the claimed negligence arises out of the failure of the United States to carry out a statutory duty in the conduct of its own affairs").

### Conclusion

For the reasons stated above, the Court finds and holds as follows:

1. Defendants' motion for summary judgment (document no. 32) is granted as to Counts II, III, IV, V, and VI.

2. As to Count I (Privacy Act), defendants' motion for summary judgment is granted in part and denied in part. The following claims survive:

a. plaintiff's claim that § 552a(b) was willfully violated by the release of the proposed letter of removal;

b. plaintiff's claim that § 552a(b) was willfully violated by Mr. Mulvey's release of protected information concerning the Martin matter (plaintiff's prior discharge);

c. plaintiff's claim that § 552a(e)(3) was willfully violated by the Board's failure to apprise those with whom Board members spoke that a principal purpose of their investigation was to assess the need for action against Dr. Kassel;

d. plaintiff's claim that § 552a(e)(5) was willfully violated by the Board of Inquiry's failure to compile a reasonably complete and accurate report;

e. plaintiff's claim that § 552a(e)(6) was willfully violated by the release of protected information concerning the Martin matter without first taking steps to ensure the accuracy of that information;

f. plaintiff's claim that § 552a(e)(7) was willfully violated by the collection, use, and maintenance of documents describing how he exercised rights guaranteed by the First Amendment; and

g. plaintiff's claim that § 552a(e)(8) was violated by the release of certain documents during the prior litigation between Dr. Kassel and *USA Today*.[9]

SO ORDERED.

---

9. In his amended complaint, plaintiff also alleges that the Privacy Act was violated when Dr. Slavomir Kolada, Chief of Psychology at the Manchester VA, released certain records to counsel for *USA Today* pursuant to subpoena. Plaintiff asserts that this release violates 5 U.S.C. § 552a(e)(8), which requires notice before disclosure of information in response to legal process. Defendants have not included subsection (e)(8) in their motion for summary judgment.