**John P. SHANNON, Plaintiff,**

v.

**GENERAL ELECTRIC COMPANY, United States Department of Energy, United States Department of Energy Office of the Inspector General and the United States Office of Personnel Management, Defendants.**

No. 92–CV–0696.

United States District Court,
N.D. New York.

Jan. 28, 1993.

Gleason, Dunn, Walsh & O'Shea, Albany, N.Y. (Ronald G. Dunn, of counsel), for plaintiff.

Sidley & Austin, New York City (Richard A. Stanley, of counsel), for General Electric Co.

Richard Thornburgh, Att. Gen., Dept. of Justice, Federal Programs Branch, Washington, D.C. (Paul W. Bridenhagen, Elizabeth A. Pugh, of counsel), for the Federal Defendants.[1]

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

*Introduction*

The plaintiff, a retired employee of defendant General Electric Company [hereinafter referred to as "GE"], filed the above-captioned lawsuit on May 29, 1992. He

---

1. For the purposes of this Decision, "Federal Defendants" refers to the United States Department of Energy, the United States Department of Energy Office of the Inspector General and the United States Office of Personnel Management, unless otherwise stated. If referred to separately, the United States Department of Energy will be referred to as "DOE," the United States Department of Energy Office of the Inspector General will be referred to as "DOE–IG" and the United States Office of Personnel Management will be referred to as "OPM."

seeks declaratory, injunctive and monetary relief for violations of the Privacy Act of 1974, 5 U.S.C. § 552a, and for violations of his constitutional rights under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) and its progeny. In his complaint, the plaintiff asserts seventeen causes of action as follows (numbered as they are numbered in the complaint), the first sixteen being alleged as violations of the Privacy Act and the last two being violations of the *Bivens*-type:

1) **against DOE and DOE-IG:** for the intentional and willful violation of the Privacy Act in releasing to GE the Schenectady Nuclear Reactors [hereinafter referred to as "SNR"] investigation report or, alternatively, for failing to establish procedures to ensure the privacy of such reports, causing damages including severe emotional harm (Complaint at ¶¶ 60–67);

2) **against DOE and DOE-IG:** for the intentional and willful violation of the Privacy Act in releasing to GE the Abstract Report or, alternatively, for failing to establish procedures to ensure the privacy of such reports, causing damages including severe emotional harm (Complaint at ¶¶ 66–73);

3) **against GE:** for the intentional and willful violation of the Privacy Act in releasing to the Headliner, the GE newsletter, the SNR Report or, alternatively for failing to establish procedures to ensure the privacy of such reports, causing damages including severe emotional harm (Complaint at ¶¶ 74–80);

4) **against GE:** for the intentional and willful violation of the Privacy Act in releasing to the Headliner, the GE newsletter, the Abstract Report or, alternatively for failing to establish procedures to ensure the privacy of such reports, causing damages including severe emotional harm (Complaint at ¶¶ 81–86);

5) **against GE:** for the intentional and willful violation of the Privacy Act in releasing to the press (in a press release), the Abstract Report or, alternatively for failing to establish procedures to ensure the privacy of such reports, causing dam-

ages including severe emotional harm (Complaint at ¶¶ 87–92);

6) **against GE:** for the intentional and willful violation of the Privacy Act in releasing to the press (in a press release), the SNR Report or, alternatively for failing to establish procedures to ensure the privacy of such reports, causing damages including severe emotional harm (Complaint at ¶¶ 93–98);

7) **against GE:** for the willful and intentional violation of the Privacy Act in maintaining an inaccurate personnel file on plaintiff, specifically with respect to the January 10, 1986 letter, causing damages including severe emotional harm (Complaint at ¶¶ 99–112);

8) **against GE:** for the willful and intentional violation of the Privacy Act in placing four versions of a derogatory performance appraisal in plaintiff's personnel file between February 12, 1986 and after March 22, 1990 but not before August 7, 1990, causing damages including severe emotional harm (Complaint at ¶¶ 113–128);

9) **against GE:** for the willful and intentional violation of the Privacy Act in preparing three inaccurate performance appraisals prepared in a period of one and one-half years and in maintaining same in the plaintiff's personnel file with the intention of harassing and embarrassing him in an effort to justify their retaliatory employment decisions, causing damages including severe emotional harm (Complaint at ¶¶ 129–141);

10) **against GE:** for the willful and intentional violation of the Privacy Act in placing inaccurate performance appraisals, prepared during the period of April 1988 through October 1988, into the plaintiff's personnel file with the intention of harassing and embarrassing him in an effort to justify their retaliatory employment decisions, causing damages including severe emotional harm (Complaint at ¶¶ 142–146);

11) **against GE:** for the willful and intentional violation of the Privacy Act in placing inaccurate performance appraisals, prepared during the period of Octo-

ber 1988 through April 1989, into the plaintiff's personnel file with the intention of harassing and embarrassing him in an effort to justify their retaliatory employment decisions, causing damages including severe emotional harm (Complaint at ¶¶ 147–151);

12) **against OPM:** for the willful and intentional violation of the Privacy Act in refusing to expunge the plaintiff's personnel file of the inaccurate and derogatory items, which in turn had an impact on the plaintiff's security rating, causing damages including severe emotional harm (Complaint at ¶¶ 157–164);

13) **against DOE:** for the willful and intentional maintenance of irrelevant, untimely and incomplete personnel records on the plaintiff in violation of the Privacy Act, causing damages including severe emotional harm (Complaint at ¶¶ 165–167);

14) **against GE:** for the willful and intentional attempt to create false and unfair statements by four GE employees and to maintain same in the plaintiff's personnel file in order to justify the plaintiff's demotion, in violation of the Privacy Act, causing damages including severe emotional harm (Complaint at ¶¶ 168–196);

15) **against DOE and DOE–IG:** for the willful and intentional breach of duty as contained in Privacy Act, 5 U.S.C. § 552a(e)(5), to use accurate, relevant and complete data in failing to investigate the plaintiff's complaint, causing damages including severe emotional harm (Complaint at ¶¶ 197–202);

16) **against GE:** for the deliberate commencement of a campaign to harass, humiliate and discredit the plaintiff in retaliation for his critical report on the Kesselring site, thus violating his constitutional civil rights so as to constitute a violation of *Bivens* (Complaint at ¶¶ 203–208); and

17) **against DOE and DOE–IG:** for the participation in the conduct complained of in cause of action no. 16 above (Complaint at ¶¶ 209–215).

Prior to answering the complaint, and prior to any discovery in this matter, the defendants have filed the following motions:

*The federal defendants:*

1) for summary judgment on the first and second causes of action, pursuant to Rule 56 of the Federal Rules of Civil Procedure;

2) for dismissal of the twelfth, thirteen and fifteenth causes of action, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on statute of limitations grounds; and

3) for dismissal of the fifteenth and seventeenth causes of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted;

*GE:*

1) for dismissal of the seventh, eighth, ninth, tenth, eleventh and fourteenth causes of action, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, on statute of limitations grounds;

2) for dismissal of the sixteenth cause of action, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted; and

3) for sanctions against the plaintiff, pursuant to Rule 11 of the Federal Rules of Civil Procedure.

The plaintiff has responded to these motions and the defendants have, with leave of court, submitted reply papers. Oral argument was thereafter presented on December 4, 1992 in Albany, New York, at which time this court reserved decision. After due deliberation on the issues presented, the following constitutes the Memorandum–Decision and Order of this court:

### Factual Background

The plaintiff worked at the Knolls Atomic Power Laboratory [hereinafter referred to as "KAPL"] in Niskaya, New York, from December 1959 until January 1990, at which time he retired. *See* Complaint at ¶ 4; Federal Defendants' 10J Statement at ¶ 1. KAPL is a laboratory that DOE owns

and operates for the purpose of research and for the production of nuclear-powered military craft and nuclear weaponry. GE, pursuant to a contract with DOE, operates KAPL under the direct supervision, control and oversight of DOE. *See* Complaint at ¶¶ 5, 6 & 10; Federal Defendants' 10J Statement at ¶ 2.

DOE has an office on the KAPL site called Schenectady Naval Reactors (SNR). SNR is staffed by approximately 50 DOE employees who are responsible for the supervision and oversight of GE's operation of KAPL. *See* Complaint at ¶ 11.

By the terms of the GE–DOE contract, GE agreed to comply with the provisions of the Privacy Act in all of its dealings with employees at KAPL and to safeguard the disclosure of documents protected by the Privacy Act. *See* Complaint at ¶¶ 12 & 13.

In 1985, the plaintiff was the Manager of Nuclear Criticality Safety/Industrial Safety and Industrial Hygiene [hereinafter referred to as "Nuclear Criticality"] at KAPL. *See* Federal Defendants' 10J Statement at ¶ 3. As Manager of Nuclear Criticality, the plaintiff, on November 26, 1985, published a Safety Inspection Report that was, as the plaintiff characterizes it, "very critical" of health and safety conditions at KAPL's Kesselring Site Operations [hereinafter referred to as "Kesselring"]. *See* Complaint at ¶¶ 16, 17; Federal Defendants' 10J Statement at ¶ 4.

On December 12, 1985, the plaintiff's department received an audit conducted by the Fuel Handling and Storage Safety Council, which the plaintiff contends was manipulated to manufacture a negative impression of the plaintiff and his department in retaliation for his November 26, 1985 Safety Inspection Report. *See* Complaint at ¶¶ 20–21; Federal Defendants' 10J Statement at ¶ 5. The plaintiff responded to this audit in writing, but he alleges that his responses were refused by his supervisors. *See* Complaint at ¶ 24.

On January 10, 1986, the plaintiff was demoted/reassigned to Lead Engineer Nuclear Criticality Safety. *See* Complaint at ¶ 22; Federal Defendants' 10J Statement at ¶ 5.

On September 22, 1986, the plaintiff was again demoted/reassigned to Senior Nuclear Engineer—DW2 Nuclear Design. *See* Complaint at ¶ 26; Federal Defendants' 10J Statement at ¶ 5.

The plaintiff filed a discrimination complaint with the SNR office on October 27, 1988, alleging retaliation and/or discrimination for his November 26, 1985 Safety Inspection Report on the Kesselring Site. *See* Complaint at ¶ 27; Federal Defendants' 10J Statement at ¶ 6. SNR investigated the complaint, and concluded that the plaintiff was not the subject of discrimination. *See* Complaint at ¶ 29; Federal Defendants' 10J Statement at ¶ 7. These results were compiled in a report entitled "SNR investigation of a discrimination complaint submitted by J.P. Shannon," the so-called "SNR report," issued on or about March 27, 1989. *See* Complaint at ¶ 27; Federal Defendants' 10J Statement at ¶ 8. Each page of this report is marked "Official Use Only;" the enclosure letter to the plaintiff characterized the document as being protected by the Privacy Act. *See* Complaint at ¶¶ 29, 30 & 33 and Exhibit F annexed to Shannon Affidavit.[2]

The plaintiff filed an appeal of the SNR report with the DOE Office of Hearing and Appeals on May 26, 1989, complaint at ¶ 38, requesting "a hearing before a neutral Administrative Law Judge with full procedural due process protections as provided for in Department of Labor proceedings, 29 C.F.R. Part 24," Halvorson Declaration at ¶ 5. . *See* Federal Defendants' 10J Statement at ¶ 9. Attached thereto was a copy of the SNR Report. *See id.* at ¶ 10 (*citing* Halvorson Declaration at ¶ 4).

---

**2.** It should be noted that the enclosure letter does not use the language "Privacy Act," but rather states:

"This letter has been marked "Official Use Only" merely to maintain the privacy of this matter between you and the United States Government. It does not preclude such use of the matter as you may consider appropriate."

In a letter dated March 14, 1990,[3] DOE notified the parties (GE through the Manager of KAPL and the plaintiff) of the appeal procedures that were to be employed: the parties were advised that there would be an independent investigation of its allegations conducted by DOE–IG; they were advised that upon completion of the investigation each of them would receive a copy of the DOE–IG report; they were advised of the identity of the hearing officer who had been appointed to preside at the appeal hearing; and they were advised that a hearing would be scheduled within 60 days of receipt of the DOE–IG report. GE, being a party to this appeal process, was provided a copy of the plaintiff's appeal brief, including a copy of the SNR Report, by DOE. *See* Complaint at ¶ 7; Federal Defendants' 10J Statement at ¶ 11.

In accordance with the procedures outlined by DOE in its letter to the parties, DOE–IG conducted an investigation concerning the plaintiff's allegations of discrimination with regard to the SNR Report. *See* Complaint at ¶¶ 38, 39; Federal Defendants' 10J Statement at ¶ 12. This investigation resulted in the preparation of the 260 page report referred to by DOE as Inspection Report S90IS006 and entitled "Abstract Report of Inspection of Allegations of Discrimination Against an Employee of Knolls Atomic Power Laboratory for Reporting Safety and Health Concerns." *See* Complaint at ¶¶ 41–42 and Exhibit G annexed to Shannon Affidavit; Federal Defendants' 10J Statement at ¶ 12. The Abstract Report is maintained by DOE–IG. Federal Defendants' 10J Statement at ¶ 13 (*citing* Conley Declaration). Again, in accordance with the procedural framework of which the parties were apprised by DOE and in anticipation of the administrative hearing/appeal, a copy of the Abstract Report was transmitted by DOE to the plaintiff and to GE (to the General Manager of KAPL) on September 20, 1990. *See* Federal Defendants' 10J Statement (*citing* Edmondson Declaration at ¶¶ 3–5).

In the September 28, 1990 issue of the KAPL Headliner, an internal newsletter published by GE, the results of both the SNR report and the DOE–IG Abstract Report were published. The plaintiff did not consent to the publication. *See* Complaint at ¶¶ 48–52.

In the October 1990 issue of the Niskaya Journal, a local newspaper, the results of the Abstract Report were published, having allegedly been released to the press by GE. The plaintiff did not consent to the disclosure of this information to the press. *See* Complaint at ¶¶ 54–56.

By letter dated October 12, 1990, the plaintiff withdrew his request for an appeal. *See* Edmondson Declaration at ¶ 6. Thus, no hearing was ever scheduled.

On or about August 26, 1991, DOE, based upon the DOE–IG Abstract Report, informed the plaintiff that it had concluded that there had been no discrimination. GE issued a press release on or about September 5, 1991, advising of the results of the SNR report, of DOE–IG's Abstract Report and of DOE's final decision. The plaintiff did not consent to the dissemination of this information. *See* Complaint at ¶¶ 51–59.

The plaintiff filed this lawsuit on May 29, 1992.

### Legal Discussion

There are essentially two types of causes of action alleged here: the Privacy Act causes of action (# 1–15) and the two *Bivens* claims (# 16 & 17). Each will be separately considered with regard to the motions to dismiss and for summary judgment.

### A. Privacy Act, 5 U.S.C. § 552a

The Privacy Act of 1974 (as amended) is set out in section 552a of title 5 of the United States Code.[4] The Act was intend-

---

**3.** Although Mr. Edmondson in his affidavit, discloses that copies of this letter were sent to all interested parties, his attachments did not reflect that a copy was sent to the plaintiff. However, since the plaintiff does not deny receiving such a letter, the court will, for purposes of this decision, accept Mr. Edmondson's declaration as true.

**4.** The relevant provisions of section 552a read in pertinent part as follows:

ed to provide certain safeguards for an individual against an invasion of personal privacy by federal agencies,[5] except as otherwise provided by law. Privacy Act of 1974, Pub.L. No. 93–579, § 2(b), 1974 U.S.C.C.A.N. (88 Stat.1896) 2177, 2178; *see also* S.Rep. No. 93–1183, 93rd Cong., 2nd Sess. 2177 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6916, 6916–17.

The mandates of the Act pertain and apply only to those documents that are maintained in an agency's "system of records." 5 U.S.C. § 552a(b).

Each agency that maintains a system of records shall "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Further, no agency may disclose any record maintained within its system of records "by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless such nonconsensual disclosure is provided for in one of the twelve enumerated exceptions provided for by the statute. 5 U.S.C. § 552a(b).

The Privacy Act also provides for civil remedies in the event of a violation of the Act. *See* 5 U.S.C. § 552a(g)(4) (actual damages and attorneys' fees for intentional and willful violations); § 552a(g)(2) (injunctive

"(a) Definitions.—For purposes of this section—

. . . . .

(5) the term 'system of records' a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular *assigned to the individual;*

. . . . .

(7) the term 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected;

. . . . .

(b) Conditions of Disclosure.—No agency shall disclose any record which is contained in a system of records by any means of communication *to any person, or to another agency,* except pursuant to written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be—

. . . . .

(3) for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section;

. . . . .

(e) Agency requirements.—Each agency that maintains a system of records shall—

. . . . .

(4) ... publish in the Federal Register upon establishment or revision a notice of the existence and character of the system of records ...

(5) maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is rea-

sonably necessary to assure fairness to the individual in the determination;

(6) prior to disseminating any record about an individual to any person other than an agency, ... make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes;

. . . . .

(g)(5) An action to enforce any liability created under this section may be brought in the district court of the United States in the district in which the complainant resides, or has his principal place of business, or in which the agency records are situated, or in the District of Columbia, without regard to the amount in controversy, within two years from the date on which the cause of action arises, except that where an agency has materially and willfully misrepresented any information any information required under this section to be disclosed to an individual and the information so misrepresented is material to establishment of the liability of the agency to the individual under this section, the action may be brought at any time within two years after discovery by the individual of the misrepresentation...."

**5.** The term "agency" for Privacy Act purposes, is intended to include "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f), *as redesignated from* 5 U.S.C. § 552(e), *referred to in* 5 U.S.C. § 552a(a)(1). There is no dispute that GE is subject to the requirements of the Privacy Act, inasmuch as it falls within the definition of "agency."

relief to correct records and attorneys' fees); § 552a(g)(3) (injunctive relief to disclose records and attorneys' fees).

Section 552a(g)(5) vests the federal district court with jurisdiction over any alleged violation of the Privacy Act. That section also provides for a two year statute of limitations from the date on which the violation occurred or from the date of discovery of the violation in the case of willful and material misrepresentation.

*1. DOE's Motion for Summary Judgment on the first and second causes of action on the ground that the disclosure of the SNR report and the Abstract Report were within the "routine use" exception to disclosure:*

With respect to the first and second causes of action, DOE asserts that there was no violation of the Privacy Act due to its disclosure to GE of the SNR Report and the Abstract Report since it did so pursuant to the "routine use" exception of 5 U.S.C. § 552a(b)(3). That exception provides that the agency may disclose a report without prior written consent when the report is intended "for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section."

■ Subsection (a)(7) states " 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." Subsection (e)(4) requires that the agency enter the list of its "systems of records" in the Federal Register and include therein the categories of users and purposes which would constitute a "routine use" thereof. 5 U.S.C. § 552a(e)(4)(D). Thus, the requirements for a proper routine use disclosure are (1) that notice of the routine use be published in the Federal Register pursuant to 5 U.S.C. § 552a(e)(4); and (2) that the use be compatible with the purpose for which the information was collected. *Britt v. Naval Investigative Serv.*, 886 F.2d 544,

547 (3d Cir.1989). *Accord* Plaintiff's Memorandum of Law at 13.

In the case of DOE systems of records, one such routine use includes disclosure of records "to parties and their attorneys for the purpose of proceeding with litigation or settlement of disputes." 47 Fed.Reg. 14,313, Appendix B, ¶ 4(c).

The SNR Report was provided to GE, on March 12, 1990, only after the plaintiff filed an appeal of the SNR report findings with DOE on May 26, 1989. *See* Halvorson Declaration at ¶ 7. This disclosure was made incidental to the appeal, and, in fact, was included by the plaintiff as an attachment to his appeal brief. The Abstract Report was prepared in anticipation of the administrative hearing/appeal requested by the plaintiff. *See* Edmondson Declaration at ¶¶ 3–5. This report was released to GE on September 20, 1990 for the stated purpose of enabling GE to prepare for the "hearing before a neutral Administrative Law Judge with full procedural process guarantees" as requested by the plaintiff in his appeal document. *See* Halvorson Declaration at ¶¶ 5 & 8; Edmondson Declaration at ¶ 2. Thus, DOE asserts that both reports were properly disclosed to GE pursuant to the "routine use" exception. Further, DOE asserts that the plaintiff was put on notice that such disclosure would be made when he was advised of the procedure required to be followed in the appeal process. *See* Federal Defendants' Memorandum of Law at 15 n. 8.

The plaintiff does not specifically confront this challenge to this first two causes of action. Instead, he raises an alternative theory of recovery, alleging that DOE and DOE–IG failed to establish procedures to maintain the security of the documents at issue once they were released to third parties, i.e. GE, in violation of 5 U.S.C. § 552a(e)(10). The plaintiff contends that the mere fact that GE republished the contents of these reports, necessarily leads to the conclusion that DOE and DOE–IG failed in their statutory duty. *See* Plaintiff's Memorandum of Law at 12–13.[6] Fur-

---

**6.** The federal defendants contend that this republication allegation is a new one alleged by

the plaintiff for the first time in his Memorandum of Law. They contend that the complaint

thermore, the plaintiff contends that prior to disclosing these documents to GE, DOE and DOE–IG failed to assure that the reports were accurate, complete, timely and relevant, in violation of § 552a(e)(6).

The federal defendants contend that these theories of liability pursuant to 5 U.S.C. §§ 552a(e)(6) & (10) are new, have not been plead and should not be considered by the court.[7] Nevertheless, the federal defendants respond to these contentions asserting that they have a procedure to safeguard the information released to GE. Specifically, they contend that as a part of the contract with GE, DOE was to review all proposed releases of information. *See* Muir Declaration at ¶ 12. In compliance with the terms of the contract, GE sought and obtained DOE approval to release portions of the reports to respond to the plaintiff's public allegations of safety violations at the KAPL site. *See* Federal Defendants' Reply Memorandum of Law at 14 & 14 n. 13 (disclosing for the first time the plaintiff's appearance on ABC's "Prime Time Live," the transcript of which is attached as Attachment 5 to Reply Memorandum). The defendants contend that by virtue of the plaintiff's own conduct, he placed the issue in the "public realm" and therefore it was permissible to release the limited information that GE (with DOE authorization) released to the media. *See id.* at 15–16 (*citing Kassel v. United States Veterans Admin.*, 709 F.Supp. 1194 (D.N.H.1989)).

In reviewing these assertions and contentions by both the plaintiff and the defendants, the court takes particular notice of the plaintiff's challenge to this motion on the ground that it was premature since there has been absolutely no discovery in this case. *See* Plaintiff's Memorandum of Law at 11 (*citing National Life Ins. Co. v. Solomon*, 529 F.2d 59 (2d Cir.1975); *Jarrell v. United States Postal Serv.*, 753 F.2d 1088, 1092 (D.C.Cir.1985). In support of the plaintiff's challenge on this basis, the plaintiff has provided this court with a list of those items of discovery which he contends are needed for this litigation in general and are needed to respond more thoroughly to the defendants' motion in particular. *See* Plaintiff's Memorandum of Law at 8–9. Since this discovery is still outstanding, the plaintiff contends that summary judgment is premature. *See id.* at 11–12 (*citing Hudson River Sloop Clearwater v. Dep't of the Navy*, 891 F.2d 414, 422; *Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265, 275 (1986)).

■ In light of the significant factual issues presented by the arguments made by the parties, coupled with the lack of opportunity for the plaintiff (and the defendants) to engage in any discovery in this case, the court agrees with the plaintiff and finds that the defendants' motion for summary judgment with respect to these first two causes of action is premature and is therefore denied without prejudice.

merely alleges that the "results" and/or the "findings" of the reports were released. As such, they contend that the plaintiff's argument should be disregarded when considering their motion. *See* Federal Defendants' Reply Memorandum at 14 n. 12. However, this assertion is one of semantics—whether the reports were republished in their entirety or whether only their "results" and/or "findings" were published is a distinction without a difference. The gravamen of the case is the disclosure; it does not matter whether it was all or part of the reports that were disclosed because what matters is the disclosure.

7. The plaintiff also alleges in a footnote that DOE and DOE–IG failed to comply with the requirement that they include this disclosure within an accounting, in violation of section

552a(c)(1). *See* Plaintiff's Memorandum of Law at 14 n. 5. This statutory requirement mandates that the federal agency set out, for each system of records under its control, an accounting of "the date, nature and purpose of each disclosure of a record to any person or to another agency made under subsection (b)" and "the name and address of the person or agency to whom the disclosure is made." The accounting must be maintained for at least five years or the life of the record, whichever is longer. As the federal defendants correctly assert, this allegation is a new one not contained within the complaint and thus, should and will not be considered by the court as an appropriate response to their motion. *See* Federal Defendants' Reply Memorandum of Law at 6.

**2. Federal Defendants' Motion to Dismiss the twelfth (against OPM) and thirteenth and fifteenth (against DOE)[8] causes of action and GE's Motion to Dismiss the seventh, eighth, ninth, tenth, eleventh and fourteenth causes of action as being time-barred:**

The federal defendants allege that these three causes of action should be dismissed on the ground that they are time-barred by the two year statute of limitations. *See* Federal Defendants' Memorandum of Law at 7–8; GE's Memorandum of Law at 7–10.

■ The Privacy Act's statute of limitations is jurisdictional and begins to run when a plaintiff "first knew or had reason to know that the … records were being maintained." *Diliberti v. United States,* 817 F.2d 1259, 1261–62 (7th Cir.1987) (*cited in Akutowicz v. United States,* 859 F.2d 1122, 1126 (2d Cir.1988)); *see also Bowyer v. United States Air Force,* 875 F.2d 632, 636 (7th Cir.1989), *cert. denied,* 493 U.S. 1046, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990); *Englerius v. Veterans Admin.,* 837 F.2d 895, 897 (9th Cir.1988); *Bergman v. United States,* 751 F.2d 314, 316 (10th Cir.1984), *cert. denied,* 474 U.S. 945, 106 S.Ct. 310, 88 L.Ed.2d 287 (1985).

. The plaintiff argues that the Privacy Act provides for the initiation of a lawsuit where there is a failure

"to maintain[9] any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, *and consequently a determination is made which is adverse to the individual….*"

*See* Plaintiff's Memorandum of Law at 15–16 (*quoting* 5 U.S.C. § 552a(g)(1)(C) (emphasis added)). He therefore concludes

that the plain language of the statute makes it clear that a cause of action does not accrue until there is harm resulting from an adverse determination. *See id.* at 16.

■ In *Bergman v. United States,* 751 F.2d at 316, the court held that a cause of action sounding in the Privacy Act arises at the time when:

1) an error was made in maintaining the plaintiff's records;

2) the plaintiff was wronged by the error; and

3) the plaintiff either knew or had reason to know of such error.

While there is clearly a controversy over whether there was any error in maintaining any of the plaintiffs' records, the primary source of argument here seems to be the issue of when the plaintiff was wronged by the error and whether he knew or should have known of the wrong allegedly committed against him. The plaintiff contends that despite his knowledge of the alleged error, he was not wronged by the error until some time later and therefore, the cause of action did not accrue as early as the defendants would have it.

In applying the *Bergman* analysis to determine when each cause of action accrued, the court must examine each cause of action to ascertain what the "wrong" is of which the plaintiff is complaining and when the plaintiff knew or should have known of that wrong.

■ Turning then to the seventh cause of action, the plaintiff challenges not the use but only the accuracy of a letter dated January 10, 1986 which he alleges he was handed by a SNR employee on or about March 30, 1989. *See* Complaint at ¶¶ 99, 103. By virtue of the allegations in the complaint with respect to this cause of action, the plaintiff is alleging that the letter was maintained in his file, not that it

---

**8.** The fifteenth count also alleges Privacy Act violations against DOE–IG. This defense is only asserted as it relates to DOE, however.

**9.** The term "maintain" is defined to include "maintain, collect, use or disseminate." 5 U.S.C. § 552a(a)(3).

was used in any adverse way. Therefore, the "wrong" he is alleging is that of keeping this erroneous letter in his file. Since he was aware of its existence in his file by no later than March 30, 1989, the date on which, by his own admission, he was handed a copy of the letter, that is the date on which he learned of the wrong that was allegedly committed against him. Thus, this cause of action is clearly time barred, since the complaint was filed on May 29, 1992, over *three* years thereafter.

■ With respect to the eighth through the eleventh causes of action, inclusive, the plaintiff is again challenging the placement and maintenance of various performance appraisals in his personnel file. The "wrong" then is the placement and maintenance of the appraisal in this file. GE contends that it may be reasonably inferred that the plaintiff was provided with copies of the performance appraisals on or about the dates they were prepared and placed in his personnel file, to wit, on January 28, 1988, in October of 1988, and in April of 1989. While the court is not willing at this stage to make such an *inference*, it will take note, however, of the facts alleged by the plaintiff. In particular, in the papers submitted by the plaintiff, he attached a copy of the SNR report which he admits receiving on or about March 27, 1989, *see* Exhibit F annexed to Plaintiff's 10J Statement, and that report disclosed the first two personnel appraisals. As such, the plaintiff had reason to know of these first two appraisals well over *three* years prior to the date on which this lawsuit was filed. With respect to the third appraisal, conducted in April of 1989, that was disclosed in the DOE–IG Abstract Report, which was transmitted to the plaintiff on or about March 14, 1990, *see* Abstract Report at 4 annexed to Plaintiff's 10J Statement as Exhibit G, again, over two years prior to the filing of this lawsuit. Thus, since the plaintiff had reason to know of the existence of all three of these performance appraisals in excess of two years prior to the time this lawsuit was filed, these causes of action should be dismissed.

■ With respect to the twelfth cause of action, the plaintiff alleges a Privacy Act violation in the failure to expunge from his personnel file various items which he terms inaccurate and derogatory; again, he is not alleging any *use* of the challenged items. The "wrong" of which the plaintiff complains, then, is once again, the placement and maintenance of the damaging and derogatory items in his personnel file. The federal defendants assert that the plaintiff had been aware of the contents of his personnel file for well beyond two years prior to the initiation of this lawsuit, on May 29, 1992. Citing to the complaint, the defendants direct the court to the following allegations by the plaintiff:

1) complaint at ¶ 158—the plaintiff requested an amendment of the documents in the possession of OPM on March 8, 1989;

2) complaint at ¶ 162—OPM partially granted plaintiff's request on December 18, 1989; and

3) complaint at ¶ 163—the plaintiff alleges that the unamended records that continue to be maintained by OPM are inaccurate and thereby violate the Privacy Act.

In an attempt to counter this argument, the plaintiff contends that he was not harmed by the existence of these records until DOE issued its final determination that there had been no discrimination. That final DOE determination was issued on or about August 26, 1991. The plaintiff would have the court use that date as the date on which this cause of action accrued. However, in reviewing this cause of action, just as with any review for statute of limitations purposes, the court must look to the earlier of when the plaintiff knew or should have known of the violation. It should be noted, however, that there is no legal basis for reviving a Privacy Act violation through subsequent adverse determinations made upon a record. *Bowyer v. United States Air Force*, 875 F.2d at 638, *cert. denied*, 493 U.S. 1046, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990). Thus, if the plaintiff knew or should have known of the initial Privacy Act violation, he cannot revive a potential cause of action simply because the violation continued to occur; he

can allege subsequent violations only if there are subsequent events that occurred in violation of the Privacy Act.

Here, with respect to the twelfth cause of action, the plaintiff contends that the failure to expunge from his file the erroneous records had an impact upon his security rating and thus resulted in the violation. Thus, by the terms of the cause of action itself, for statute of limitations purposes, the time when the alleged "wrong" occurred was at the time the plaintiff knew or should have known of the failure of OPM to expunge the records. He certainly knew that OPM had failed to fully expunge his file of the alleged false and inaccurate records when his amendment request was partially denied on May 3, 1989, *see* Complaint at ¶ 160).[10] Additionally, he knew of the violation of the Privacy Act when he determined that his security rating was adversely impacted by virtue of those records. That latter date is unknown and undisclosed, however, and thus cannot be used for this analysis.[11] Thus, the plaintiff knew of the error at the latest by May 3, 1989, at which time he also should have realized that the error was potentially harmful. This cause of action can reasonably be found to have arisen, then, by no later than May 3, 1989, and is therefore time barred.

The thirteenth cause of action relates to the same records referred to in the previous cause of action, except that the allegation is that DOE maintains these records. Thus, the same analysis that applied to twelfth cause of action also applies to this cause of action and, as such, it must fail as being time-barred.

■ The fourteenth cause of action relates to allegedly false and inaccurate statements by several GE employees of which GE contends the plaintiff must have had knowledge when he filed his request to amend his personnel file on March 8, 1989.

Again, the "wrong" about which the plaintiff is herein complaining is the making of the statements themselves and the maintenance of these statements in his personnel file. While GE's contention may in fact be the case, a more solid factual footing lies in reviewing the Abstract Report. The Abstract Report contains information about the statements of the four GE employees and since the plaintiff was provided with a copy of the Abstract Report on or about March 14, 1990, he "knew" or "should have known" of those statements at that time. Thus, this cause of action is time-barred as well.

■ In the fifteenth cause of action, the plaintiff asserts Privacy Act violations against both DOE and DOE–IG. In this cause of action, as it relates to DOE only, the plaintiff challenges the accuracy of the information contained SNR Report concerning his evaluation of the health and safety violations at the Kesslering Site. The "wrong" he alleges is the use of the allegedly inaccurate, irrelevant and incomplete data to prepare the report and the failure of DOE to investigate his complaint. The plaintiff acknowledged in his complaint that he had knowledge of the contents of the SNR Report by virtue of the fact that a copy was sent to him on or about March 27, 1989. Thus, he had knowledge of the contents of the report, which reflected the alleged inaccuracies, well over two years prior to the commencement of this lawsuit, and this cause of action is therefore time-barred insofar as it relates to DOE only.

*3. DOE–IG's Motion to Dismiss the fifteenth cause of action in that the records used in the preparation of the Abstract Report were not maintained within a "system of records" and therefore, do not come within the mandates of the Privacy Act:*

DOE–IG alleges that the Abstract Report is not a report that is maintained with-

---

**10.** The plaintiff would likely place this date as December 18, 1989, when his appeal of the OPM decision not to amend his records was determined. However, no caselaw can be found to support a finding that the pendency of the appeal has any affect upon the running of the statute of limitations.

**11.** If the plaintiff made this determination prior to May 3, 1989, then this cause of action would be even more stale. If the date fell after May 3, 1989, it is still the case that he knew of OPM's maintaining what he alleges were false and inaccurate records by May 3, 1989, when his expungment request was partially denied.

in the agency's system of records, as that term is defined.[12] *See* Federal Defendants' Memorandum of Law at 9. Since this report is not such a record, DOE–IG alleges, it is not a violation of the Privacy Act to disclose it. *See id.* at 9–10 (*citing Manuel v. Veterans Admin. Hosp.*, 857 F.2d 1112, 1119–20 (6th Cir.1988), *cert. denied*, 489 U.S. 1055, 109 S.Ct. 1317, 103 L.Ed.2d 586 (1989)).

■■■ It is the "method of retrieval of a record rather than its substantive content," that controls the determination of whether the record is "maintained in a system of records." *Baker v. Dep't of Navy*, 814 F.2d 1381, 1384 (9th Cir.), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987).

■■■ Just as with all such investigations, the instant investigation was assigned a name when it was initiated by DOE–IG's Office of *Inspections*.[13] *See* Conley Declaration at ¶ 5 annexed as Attachment 2 to Federal Defendants' Memorandum of Law. The name given does not, and did not in this case, contain the name of any individual.[14] Again, just as with all such investigations, a number was here assigned to the investigation.[15] *See id.* at ¶ 6. That number here symbolized that this was the sixth investigation initiated by the Office of Inspections in 1990. *See id.*

The computer database in which these investigative reports is stored has the ability to access such a report only by the report name or its assigned number, and not by the name of any individual or by any personal identification number. *See id.* at ¶ 10.

Thus, DOE–IG argues, even if the Abstract Report is contained within a "system of records," in the general sense of that term, the disclosure and record keeping

requirements of the Privacy Act are inapplicable since the document is not retrievable by means of the plaintiff's name or other personal identifier. *See* Federal Defendants' Memorandum of Law at 10–11 (*citing Fagot v. FDIC*, 584 F.Supp. 1168, 1175 (D.P.R.1984); *Pototsky v. Dep't of Navy*, 717 F.Supp. 20, 21 (D.Mass.1989); *Smiertka v. United States Dep't of Treasury, I.R.S.*, 447 F.Supp. 221, 228 (D.D.C. 1978), *remanded*, 604 F.2d 698 (D.C.Cir. 1979)).

The plaintiff contends that the Abstract Report is maintained in a "system of records" and that it is retrievable by the plaintiff's name. *See* Plaintiff's Memorandum of Law at 23–24. The Privacy Act mandates that an agency publish, in the Federal Register, a notice of the existence and character of the system of records. 5 U.S.C. § 552a(e)(4). The DOE's notices are published at 47 Fed.Reg. 14283–14334 (1982), the summary of which states:

> "Federal agencies are required by the Privacy Act of 1974 to give annual notices of the systems of records they maintain.... On August 30, 1979 a complete compilation of Privacy Act records system notices were published for the Department of Energy (DOE).... This publication is a current compilation of system notices to reflect the Department's regulations implementing the Privacy Act."

Included in this listing is a subheading entitled "Table of Contents of All DOE Systems as Adopted or Proposed," and included among the 77 entries is one called "*Investigative* Files of Inspector General." 47 Fed.Reg. at 14285, 14319. That entry provides that the system "represents that portion of the files of the Inspector General which covers IG *investigations* of individuals." *Id.* The plaintiff also contends that

---

**12.** Section 552a(a)(5) defines a "system of records" as:

"a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying symbol, or other identifying particular assigned to the individual."

**13.** This is not the same entity as the Office of *Investigations*—a point of distinction, the impor-

tance of which will become clear *infra*. *See* Federal Defendants' Reply Memorandum at 11–12.

**14.** The name given the investigation here was the "Inspection of Knolls Atomic Power Laboratory for Reporting Safety and Health Concerns."

**15.** That number was S90IS006.

this report is accessible through the use of his name, citing the number of times the plaintiff is named within the report. On this basis, the plaintiff contends that the motion to dismiss should be denied. DOE–IG asserts that this report is not an "investigative document" as that term is used, but is rather an "inspection report" and thus, is not subject to the mandates of the Privacy Act. *See* Federal Defendants' Reply Memorandum of Law at 11. It would appear that if the federal defendants are correct in their assertions that this report is not one that is maintained within a "system of records" that is subject to the provisions of the Privacy Act, that this cause of action must fail. However, since the complaint is sufficient in at least the allegation of the violation, and the facts surrounding this cause of action have not been fully disclosed inasmuch as there has been no discovery in this case, the plaintiff's complaint with respect to this cause of action will survive this dismissal motion. It may well be, however, that following discovery, this cause of action will not survive a summary judgment motion.

### B. Bivens Causes of Action

■■■■ In a *Bivens* action, damages may be obtained for injuries sustained resulting from a violation by federal officials of a constitutionally protected right. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. at 395, 91 S.Ct. at 2004, 29 L.Ed.2d at 626. A *Bivens* action is the federal counterpart of a section 1983 civil rights action. *Mittleman v. United States Treasury*, 773 F.Supp. 442, 451 n. 8 (D.D.C.1991); *Chin v. Bowen*, 655 F.Supp. 1415, 1417 (S.D.N.Y.), *aff'd*, 833 F.2d 21, 24 (2d Cir.1987) (citations omitted); *Ellis v. Blum*, 643 F.2d 68, 84 (2d Cir.1981).

#### 1. GE's Motion to Dismiss for failure to state a claim:

The sixteenth cause of action in the complaint alleges that after the plaintiff submitted his 1985 report on the Kesselring Site that he characterizes as "very critical" of the health and safety conditions at that location, GE "commenced a deliberate cam-

paign to harass, humiliate and discredit" him. Complaint at ¶¶ 203–05. He then contends that GE is liable for violations of his constitutional rights under the doctrine enunciated by the United States Supreme Court in *Bivens. Id.* at 207.

■■■■ Ordinarily, a motion to dismiss is considered in light of the requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires that the cause of action merely contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." However, as the defendant points out, damage actions under *Bivens* are subject to a heightened standard of pleading such that "[b]are allegations of improper purpose ... do not suffice to drag officials into the mire of discovery...." GE Memorandum of Law at 3 (*quoting Smith v. Nixon*, 807 F.2d 197, 200 (D.C.Cir.1986) (citations omitted); *accord Martin v. Malhoyt*, 830 F.2d 237, 254 & n. 40 (D.C.Cir.1987)). Thus, in such cases, more than conclusory allegations of evidence of unconstitutional intent is required. *Hobson v. Wilson*, 737 F.2d 1, 29 (D.C.Cir.1984), *cert. denied sub nom. Brennan v. Hobson*, 470 U.S. 1084, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985); *see also Duncan v. AT & T Communications, Inc.*, 668 F.Supp. 232, 234 (S.D.N.Y.1987) (*citing Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987)).

■■■■ A *Bivens* action has two elements, both of which must be specifically pleaded in the complaint:

1) the claimant must show deprivation of a right secured by the constitution and the laws of the United States; and

2) the claimant must show that the defendant acted under color of federal law.

*Rivera v. United States*, 728 F.Supp. 250, 266 (S.D.N.Y.1990) (*citing Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155–56, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185, 192–93 (1978)), *aff'd in part*, 928 F.2d 592 (2d Cir.1991).

■■■■ The plaintiff's complaint fails to allege anything but conclusory, non-specific allegations of constitutional violation, with-

out indicating what constitutional right(s) is/are violated.[16] Furthermore the complaint fails to allege how the(se) right(s) was/were violated and by whom. *See* GE Memorandum of Law at 5. The factual litany that the plaintiff sets forth in support of this cause of action, *see* Complaint at ¶ 205(a)–(u), at best supports an action sounding in common law tort. *Id.* As such, the cause of action should be dismissed. *Kingsley v. Bureau of Prisons*, 937 F.2d 26, 32 (2d Cir.1991).

Additionally, this cause of action is insufficient in that it fails to allege constitutional violations by an individual or individuals. The plaintiff merely alleged that GE violated his constitutional rights.

 A company is not a proper defendant to a *Bivens* action. *Platsky v. C.I.A.*, 953 F.2d 26, 28 (2d Cir.1991) (*citing Mack v. United States*, 814 F.2d 120, 122–23 (2d Cir.1987). A *Bivens* action is intended to be one in which federal agents, as individuals, are liable for damages resulting from their actions when acting under color of federal law. *See Bivens*, 403 U.S. at 390 n. 2, 91 S.Ct. at 2001 n. 2, 29 L.Ed.2d at 623 n. 2; *Turpin v. Mailet*, 579 F.2d 152, 164 (2d Cir.1978); *see also Carlson v. Green*, 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15, 23 (1980).

The plaintiff argues that a corporation is a person for constitutional purposes, *see* Plaintiff's Memorandum of Law at 20 (*citing Comtronics, Inc. v. Puerto Rico Tele. Co.*, 409 F.Supp. 800 (1975), *aff'd*, 553 F.2d 701 (1st Cir.1977); *see also Fowler v. Nicholas*, 522 F.Supp. 655, 657 (E.D.Pa.1981)). However, he also offers to amend the complaint after the completion of discovery to name the specific individuals involved, *id.* at 21.

The plaintiff asserts that the deficiencies in the complaint indicated by the defendant are such that could be cured by amending the complaint, which he contends is the proper and appropriate remedy here. *Id.* (*citing* Wright and Miller, *Federal Practice and Procedure* § 1357 at 360–61; *Platsky v. C.I.A.*, 953 F.2d at 27).[17] Furthermore, the defendant, in a footnote to its reply memorandum, seems to be inviting an amendment "to analyze more precisely the legal sufficiency of plaintiff's *Bivens* claims." *See* GE's Reply Memorandum of Law at 5 n. 2. As such, the court will grant the defendant's motion to dismiss but will grant the plaintiff leave to amend his complaint, if appropriate, following the completion of discover. If supported by the evidence, he may then reallege this cause of action specifying the constitutional rights he is alleging were violated and naming the individuals who he asserts were acting under color of federal law and were responsible for the deprivation of those constitutional rights.

### 2. Federal Defendants' Motion to Dismiss for failure to state a claim:

 The seventeenth cause of action in the complaint charges the federal defendants with participating in the *Bivens* violations that are alleged by the plaintiff against GE in the previous cause of action. In addition to asserting that the plaintiff has failed to allege the violation of any constitutional right, the federal defendants rely upon the arguments proposed by GE in support of their motion to dismiss. *See* Federal Defendants' Memorandum of Law at 15–16.

 As such, the same arguments that are addressed above are applicable to this cause of action as well, and the result is the same: the defendant's motion to dismiss will be granted but the plaintiff will be permitted, following the completion of

---

**16.** The first mention by the plaintiff of the constitutional rights that are alleged to have been violated comes in his Memorandum of Law at 18, where he alleges that the rights violated were his "First Amendment rights," "his due process rights," and that he was deprived of "both liberty and property interests in his employment."

**17.** In *Platsky*, the court found that for this pro se plaintiff, it was inappropriate to dismiss the complaint without granting leave to amend. Even though the defendant here is not proceeding pro se, the *Platsky* case lends support to the proposition that this cause of action should be dismissed, but that leave should be granted to amend the complaint.

**324**

discovery, to amend his complaint to reallege this cause of action.

### C. GE's Motion for Sanctions against the Plaintiff's Counsel

Finally, GE has moved for the imposition of sanctions pursuant to Rule 11 against the plaintiff's counsel on the ground that "[a]ny reasonable inquiry by plaintiff's counsel would have readily disclosed that neither the *Bivens* claim nor the PA [Privacy Act] claims are warranted by existing law." *See* GE's Memorandum of Law at 12.

The plaintiff has not responded to this motion other than possibly with his catch-all conclusion that the defendants' motions should be denied. However, in light of the determinations made on the motions, it is clear that the complaint is not frivolous, at least not so in its entirety, and therefore, the motion is denied.

### Conclusions

The federal defendants' motion for summary judgment as to the first and second causes of action is denied as premature due to the lack of discovery conducted in this case; they are granted leave to resubmit the motion upon the completion of discovery. GE's motion to dismiss the seventh, eight, ninth, tenth, eleventh and fourteenth causes of action, the federal defendants' motion to dismiss the twelfth cause of action (as against OPM) and the thirteenth and fifteenth causes of action (as against DOE) are granted on the ground that these causes of action are time-barred. DOE–IG's motion to dismiss the fifteenth cause of action is denied since this cause of action is sufficiently plead and there has been no discovery so as to convert the motion into one for summary judgment. The motions to dismiss the sixteenth and seventeenth causes of action by GE and the federal defendants' respectively are granted; however, the plaintiff is granted leave to amend his complaint if appropriate and

supported by the evidence, following the completion of discovery.

IT IS SO ORDERED.